**STATE of Utah, By and Through its ROAD COMMISSION, Plaintiff and Appellant,**

v.

**W. Roy BROWN et al., Defendants and Respondents.**

No. 13742.

Supreme Court of Utah.

Feb. 14, 1975.

2. U.R.C.P. 59(a)(6).

3. U.R.C.P. 73(a); Simmons v. Wilkin et al., 80 Utah 362, 15 P.2d 32 (1932).

Vernon B. Romney, Atty. Gen., John S. McAllister, Asst. Atty. Gen., Salt Lake City, for plaintiff and appellant.

W. Eugene Hanson, Salt Lake City, for Brown.

Ralph L. Jerman and Bert L. Dart, Jr., Jerman & Dart, Salt Lake City, for Southland Corp.

ELLETT, Justice:

The plaintiff sued to condemn land belonging to the Browns. Southland Corporation had a 20-year lease upon a part of the land and operated a 7–Eleven Store thereon. There remained some 13 years of lease time with an option to renew for 10 additional years.

The plaintiff appeals from a jury verdict awarding damages as follows:

| | |
|---|---|
| Value of Land Taken | $25,229.76 |
| Severance Damages | 53,378.00 |
| | $78,607.76 |

Of this sum the jury awarded $62,840.76 to the Browns, the landowners, and $15,767.00 to Southland Corporation.

The condemning authority is liable for the value of the land taken and for severance damages to the land not taken, and it is from these amounts that the lessee must receive any damages which it may have sustained as a result of the taking. The annotation in 69 A.L.R. at page 1263 states the law as follows:

> The rule is generally recognized . . . that, where there are several interests or estates in a parcel of real estate taken by eminent domain, a proper method of fixing the value of, or damage to, each interest or estate, is to determine the value of, or damage to, the property as a whole, and then to apportion the same among the several owners according to their respective interests or estates, rather than to take each interest or estate as a unit and fix the value thereof or damage thereto separately.
>
> . . .
>
> The total of all interests cannot exceed the value of the property as a whole.[1]

. . .

The verdict on its face seems to conform to this rule. However, there are errors which prevent the verdict from being correct.

The expert witness for the Browns testified that severance damage was sustained in the amount of $45,111.51, and his estimate was the highest given in evidence. In fact, in the argument to the jury, counsel for the Browns stated:

> Then the second item is the severance. That will be the damage to the remaining property after the take. And I submit our appraiser's figure is the one that should be used, that is $45,111.51.

The award of $53,378.00 as severance damages is not sustained by the evidence.

Over the objection of counsel for the plaintiff, the court permitted the zone manager of the 7–Eleven Stores to testify as an "owner" without showing any qualification as an expert witness. The witness was in no sense an *owner* of the property. However, he did not express any opinions as to value of realty but confined his testimony to the cost and value of personal

---

1. 29A C.J.S. Eminent Domain § 136(8).

property, and in that regard he subsequently appeared to be well qualified as an expert. There would have been no error in letting him testify about the personal property if it had been proper to let such evidence be given to the jury. The trouble was that he testified to cost and depreciated value of *personal property* and *fixtures* in the 7–Eleven Store without knowing the difference between the two.

Fixtures in a building are properly valued as a part of the real estate and may enhance the value thereof. However, they are not to be valued separately and added to the value of the realty,[2] as testified to. They would already be, or should be, included in the value of the realty. Personal property and the cost of removing the same are not elements of damage for which the condemning authority is liable. In the case of Utah Road Commission v. Hansen[3] it was said:

It will be noted that our statute providing for the taking of property by eminent domain and the awarding of damages therefor upon which this action rests speaks in terms of real property and the damages to be awarded for its taking, but contains no express wording construable as allowing recovery for the cost of removing or disposing of personal property from the premises condemned. The question of its disposition has been before the courts many times and the majority view seems to be that, inasmuch as the condemnor takes only the realty, and acquires no interest in the personalty, it is the responsibility of the condemnee as owner to take care of his personal property if he desires to preserve it; and that consequently the expenses in connection with its removal or sale are not proper to be considered as a separate element of damages to be charged against the condemnor for the taking of real property. . . .

By its instructions the court told the jury to award compensation to South-

land Corporation for the difference between the market value of the unexpired term of the lease and the present value of the rents required to be paid under the lease and then told the jurors to award as severance damages in addition thereto the value of personal property in the store which became obsolete by reason of the taking.

This latter part is clearly erroneous and undoubtedly caused the jury to give severance damages in an amount greater than that testified to by the witnesses.

So far as the condemning authority is concerned, the agreement betweeen the tenant and landlord is not important. Whether the tenant gets much or little will depend upon whether his lease agreement is advantageous or disadvantageous to him. If the tenant gets much, the landowner gets less, and if the tenant gets little, then the landlord gets more.

Since the condemning authority takes the interest of both the landowner and of the lessee, it does not matter to it which of those two parties has the better bargain. If the lessee is obligated by his contract to pay more than the reasonable value of the rent, then he receives a benefit by being released from paying this excessive amount when his lease interest is condemned and sustains no compensable loss, and the landowner suffers just that much of a loss by being deprived of a lucrative lease contract. On the other hand, if the lessee is obligated to pay less than the fair market value of the lease, then he does sustain a loss when his interest is taken, but the landlord thereby sustains an equal amount of gain.

If a lease contract called for an annual rental of two arrowheads, the reasonable value of the property for its highest and best use should not be depreciated because of an improvident contract made by the owner of the land. The landowner should get the reasonable value of his land if put to its highest and best use. The lessee

---

2. State, Road Comm'n v. Papanikolas, 19 Utah 2d 153, 427 P.2d 749 (1967).

3. 14 Utah 2d 305, 308, 383 P.2d 917 (1963).

would get his share of the figure by receiving as his damage the present worth of the reasonable market value of his rental term less the present value of the payments required to be made pursuant to the contract.[4]

The landowner would no more be entitled to the benefits of large rentals which have been condemned than he would be entitled to huge profits which he might otherwise expect to earn from the realty if he operated a business instead of leasing it to another.

The judgment is reversed and the case remanded for a new trial. Costs are awarded to the appellant.

HENRIOD, C. J., and CROCKETT, TUCKETT and MAUGHAN, JJ., concur.

4.  29A C.J.S. Eminent Domain § 143b.