UTAH FARM PRODUCTION CREDIT ASSOCIATION, (Successor in interest to Bank of American Fork), Plaintiff and Respondent,

v.

WASATCH BANK OF PLEASANT GROVE; Bushnell Finance & Construction Co.; Administrator, Small Business Administration; United States of America; Wendell Hansen; Lavon Hansen; Mackey B. Boley; Joyce S. Boley; Maple Canyon, Inc.; Maple Canyon Partnership; Evergreen Turf and Tree Farms, Inc.; Western Home Bank (Pioneer State Bank); Rain for Rent, Inc.; Utah State Tax Commission; FMA Auto Leasing Co.; E.F. Hutton Credit Corp.; Industrial Commission of Utah; Strawberry Water Users Assoc.; Utah Dept. of Employment Security, Defendants and Appellants.

No. 19988.

Supreme Court of Utah.

July 31, 1986.

As Amended March 19, 1987.

Rehearing Denied March 25, 1987.

S. Rex Lewis, Provo, for defendants and appellants.

James R. Brown, Caryn L. Beck-Dudley, Thomas T. Billings, Rolf H. Berger, Joseph W. Anderson, U.S. Atty., Stephen B. Mitchell, Salt Lake City, Ray M. Harding, American Fork, for plaintiff and respondent.

PER CURIAM:

Wasatch Bank of Pleasant Grove (Wasatch Bank) appeals from an adverse summary judgment declaring its title junior and inferior to a lien placed by Bank of American Fork (BAF) against property to which Wasatch Bank subsequently obtained title.

On a motion for summary judgment, this Court will view all facts in the light most favorable to the party opposing the motion and will allow the summary judgment to stand only where the pleadings and discovery proceedings on file, together with affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law. Utah R.Civ.P. 56(c); *Aird Insurance Agency v. Zions First National Bank*, 612 P.2d 341 (Utah 1980). Viewed in that light, the facts may be summarized as follows:

On May 1, 1975, sellers Koyle entered into a contract of sale with defendants Boley and Hansen, under which Boleys and Hansens agreed to purchase from Koyles 397 acres of land. The contract was not recorded. Under that contract, Koyles agreed to release individual parcels of land upon payment of sums certain. On October 1, 1975, Hansens assigned to Boleys all of their equitable rights in that contract of sale. They also executed a warranty deed to the subject land which was recorded on February 25, 1976.

On March 26, 1976, Boleys assigned all of their equitable rights under the Koyle-Boley/Hansen contract to Evergreen Turf and Tree Farms, Inc. (Evergreen), of which Boley was president. That assignment was not recorded.

On April 21, 1976, Evergreen assigned as collateral for a note all of its equitable interest in the 397-acre tract to BAF. Two more assignments for additional promissory notes followed in 1977 and 1978. All three assignments were duly recorded in the Utah County Recorder's office. In ad-dition, Boleys gave their personal guarantees on the promissory notes.

Koyles did not release the first parcel of land (a 16.72-acre parcel) under the contract of sale until four years after selling to Boley/Hansen. Their warranty deed to Boleys and Hansens, dated May 1, 1975, and describing the 16.72-acre parcel, was recorded on May 23, 1979. On May 6, 1980, Boleys gave their trust deed on that 16.72-acre parcel to Wasatch Bank to secure the payment of certain obligations. When Boleys defaulted, Wasatch Bank exercised its power of sale under the trust deed and received, as the highest bidder, a trustee's deed to the property. Utah Farm Product Credit Association (UFPCA), successor in interest to BAF, then brought an action to foreclose its interest under the Evergreen assignments. Wasatch Bank counterclaimed to quiet title in it for the 16.72-acre parcel. Cross-motions for summary judgment resulted in the ruling here appealed. We affirm.

The sole issue before us is whether Wasatch Bank acquired title to the 16.72-acre parcel subject to UFPCA's lien or whether its title is prior and superior to UFPCA's claim.

■ Wasatch Bank contends that the assignment from Evergreen to BAF was outside its chain of title, inasmuch as Wasatch Bank traces its title to Boleys, who took an assignment and deed from Hansens, both of whom were grantees under a warranty deed from Koyles. UFPCA responds that under Utah's tract index,[1] Wasatch Bank was held to have had notice of the assignment because an examination of that index would have disclosed that instrument, though it was not in Wasatch Bank's chain of title. An examination of the record discloses that the Hansen-to-Boley deed recorded in 1976 describes the same tract of land that is described in the Evergreen assignments. Inasmuch as Koyles did not release title to the 16.72-acre parcel until 1979, Hansens in effect assigned no more than their equitable rights under the con-

---

1. U.C.A., 1953, § 17–21–6 requires that every county recorder keep an entry of record, a grantors' index, a grantees' index, a mortgagors' index, a mortgagees' index, and an abstract record which shows by tracts or parcels every conveyance or encumbrance.

tract of sale between Koyle and Boley/Hansen, and the fee simple title Hansens acquired in the 16.72-acre parcel in 1979 immediately passed to Boleys at that time. U.C.A., 1953, § 57–1–10; *Cox v. Ney*, 580 P.2d 1085 (Utah 1978). At that time, BAF had perfected the recordings of its assignments, and Boleys therefore received title subject to the lien.

> The transfer of property subsequent to the attachment of the lien does not affect the lien for "it is of the very nature and essence of a lien, that no matter into whose hands the property goes, it passes cum onere...."

*Kipnis v. County of Maricopa*, 105 Ariz. 572, 574, 468 P.2d 931 (1970), *quoting from United States v. Bess*, 357 U.S. 51, 57, 78 S.Ct. 1054, 1058, 2 L.Ed.2d 1135, 1142 (1958).

■ Wasatch Bank also argues that the Koyle-to-Boley-and-Hansen deed was properly executed, acknowledged, and recorded, and title should therefore have vested in Boleys on May 1, 1975, the date stated in the deed. U.C.A., 1953, § 57–1–6 states in pertinent part:

> Every conveyance of real estate, and every instrument of writing setting forth an agreement to convey any real estate or whereby any real estate may be affected, to operate as notice to third persons shall be proved or acknowledged and certified in the manner prescribed by this title and recorded in the office of the recorder of the county in which such real estate is situated, but shall be valid and binding between the parties thereto without such proofs, acknowledgment, certification or record, and as to all other persons who have had actual notice.

Although Wasatch Bank is correct that under that section an unrecorded warranty deed is binding between the parties, *see also Gregerson v. Jensen*, 669 P.2d 396 (Utah 1983), recording or actual notice is necessary to impart notice to third parties. U.C.A., 1953, § 57–3–2, as amended (Supp. 1985) provides in pertinent part:

> Every conveyance, or instrument in writing affecting real estate, executed, acknowledged, or proved, and certified, in the manner prescribed by this title, ... shall, from the *time of filing* the same with the recorder for record, impart notice to all persons of their contents. Subsequent purchasers, mortgagees, and lien holders are deemed to purchase and take with notice.

(Emphasis added.)

It is clear from the language of the statute that the date of recording, not the date of execution, governs the time from which an instrument imparts notice to all persons. Inasmuch as the Koyle-to-Boley-and-Hansen deed dated May 1, 1975, was not recorded until years after the Evergreen-to-BAF assignments were executed and recorded, BAF had no constructive notice [2] of the deed.

■ Mortgages are included in the definition of conveyances, U.C.A., 1953, § 57–1–1, and are subject to the provisions of section 57–3–2, *supra*. This Court has previously stated that when a borrower assigns an interest in a real estate contract as security for a loan, the assignee-lender acquires a lien on the borrower's interest in the real property which is treated like a mortgage. *Lockhart Co. v. Anderson*, 646 P.2d 678 (Utah 1982); *Kemp v. Zions First National Bank*, 24 Utah 2d 288, 470 P.2d 390 (1970). BAF recorded all of its assignments before Wasatch Bank recorded its trust deed in 1980, so that the lien had

**2.** Under our recording statute, an unrecorded conveyance is "void against any subsequent purchaser in good faith and for valuable consideration of the same real estate ... where his own conveyance shall be first duly recorded." U.C.A., 1953, § 57–3–3 (1986 Repl.). Actual or constructive notice defeats a subsequent purchaser's interest. A subsequent purchaser must therefore show that he had no actual notice, i.e., no personal knowledge, of a prior conveyance or that the prior conveyance did not impart constructive notice, i.e., was not recorded before his conveyance in the same land was recorded. We disavow today the language found in *Anderson v. American Savings*, 668 P.2d 1253 (Utah 1983), that "under our recording act, priority is given to that document which is recorded before another that asserts the same interest." Our recording act is a race-notice statute which requires lack of actual notice *or* of prior recording for a subsequent purchaser to prevail in multiple conveyances of the same land.

attached to the property at the time Wasatch Bank acquired its interest.

We hold that Wasatch Bank acquired title to the 16.72-acre parcel from Boleys, subject to the lien of BAF which was properly recorded prior to Wasatch Bank's trust deed, and that Wasatch Bank's title is junior and inferior to the lien of BAF. The summary judgment in favor of UFPCA is affirmed.