**WEST VALLEY CITY, Plaintiff and Appellant,**

v.

**MAJESTIC INVESTMENT COMPANY; The Lockhart Company; Prudential Federal Savings and Loan Association, Defendants and Appellees.**

No. 890379–CA.

Court of Appeals of Utah.

Oct. 16, 1991.

Harold A. Hintze, Paul T. Morris, and J. Richard Catten, West Valley City, for plaintiff and appellant.

Robert S. Campbell, Matthew C. Barneck, Clark W. Sessions, and Paul T. Moxley, Salt Lake City, for defendants and appellees.

Before BENCH, GREENWOOD and ORME, JJ.

## OPINION

ORME, Judge:

Appellant West Valley City appeals from a judgment awarding compensation for condemned property to appellee Majestic Investment Corporation. We affirm.

## FACTS

Majestic Investment Corporation held interests in two parcels of property located in West Valley City which Majestic leased from Henry S. Pickrell and Barbara M. Pickrell. Majestic built two commercial buildings on the property and leased them in turn to Prudential Federal Savings and Loan and The Lockhart Company. West Valley City brought this action to condemn Majestic's interests by right of eminent domain. West Valley City had previously acquired the Pickrells' interests in the property.

Majestic and the Pickrells executed a lease for the underlying real estate (the ground lease) for a term of thirty-five years, commencing May 1, 1975. The base rent for the combined parcels was $750 per month, with provisions for upward adjustment at the 11th, 21st, and 31st years of the lease. The ground lease contained a clause providing that in the event of condemnation, the ground lease would terminate and the parties' respective rights and obligations would "be adjusted as of the time of such condemnation." The lease also contained a formula for calculating Majestic's interest in any condemnation award for the value of the buildings and improvements.

On April 11, 1975, Majestic executed leases with Prudential and Lockhart providing for an initial aggregate base rent of $750 plus the amortized construction costs, with interest at twelve percent. These leases were for a twenty-five year period and were subject to adjustment every ten years. Each lease also established a total lease payment of $112,500, subject to escalation. At trial, Majestic introduced the testimony of three persons involved with the original lease negotiations between Majestic and Prudential, and Majestic and Lockhart. These witnesses testified that the rental payment was combined with the amortization of the construction costs as a method of establishing an initial base rent.

West Valley City asserted that the leases were merely "pass-through" devices, since the ground lease provided for a payment of $750 per month and the combined Prudential/Lockhart leases provided for a rental of $750 per month. If the leases were true "pass-through" agreements, with Majestic receiving exactly the amount it was obliged to pay, Majestic would not have a "bonus value" interest in the property.

■ West Valley City argues that recoupment of the construction costs created no bonus value in the land for which Majestic would be due compensation. The City claims the trial court erred in allowing parol evidence concerning the lease terms providing for recoupment of construction costs. The City also argues that the trial court failed to properly value the property and then improperly applied the contractual formula for apportionment of condemnation awards. Majestic responds that the property was properly valued and the award properly apportioned. Majestic asks that the City's challenge to the findings based on parol evidence be disregarded because no objection was raised to the parol evidence at trial.[1]

## STANDARDS OF REVIEW

■ Our review of a trial court's interpretation of a contract begins with a question of law, reviewed for correctness: Is the contract unambiguous? *Wilburn v. Interstate Elec.*, 748 P.2d 582, 585 (Utah App.1988). If it is, its interpretation is itself a question of law. *Id.* at 584. If the trial court determines the contract to be ambiguous, we begin by determining whether the court correctly made that determination as a matter of law, again applying a correction of error standard. *Id.* at 585. If the contract is ambiguous, i.e., susceptible to varying interpretation, extrinsic evidence may be introduced to clarify the parties' contractual intent. *Barnes v. Wood*, 750 P.2d 1226, 1229 (Utah App.

1988). We review the trial court's construction based on extrinsic evidence under the more deferential clearly-erroneous standard. *Id.*

A party challenging the court's interpretation of ambiguous terms of a contract faces a substantial appellate burden. We affirm the trial court's findings if they are based on sufficient evidence, viewing the evidence in the light most favorable to the trial court's construction. *See Wilburn*, 748 P.2d at 585; *Seashores Inc. v. Hancey*, 738 P.2d 645, 647 (Utah App.1987); Utah R.Civ.P. 52. The challenging party must marshal *all* relevant evidence presented at trial which tends to support the findings and demonstrate why the findings are clearly erroneous. *Bell v. Elder*, 782 P.2d 545, 547 (Utah App.1989). We have shown no reluctance to affirm when the appellant fails to adequately marshal the evidence. *See, e.g., Grahn v. Gregory*, 800 P.2d 320 (Utah App.1990); *Turnbaugh v. Anderson*, 793 P.2d 939 (Utah App.1990).

## PAROL EVIDENCE

■ Complaints about the introduction of parol evidence require an objection at trial in order to be raised on appeal. *See Co-Vest Corp. v. Corbett*, 735 P.2d 1308, 1309 (Utah 1987) (failure to object to extrinsic evidence waives the issue on appeal). The City's argument for a contrary result, premised on the notion that the parol evidence rule is substantive in nature rather than procedural, is indefensible.[2]

---

1. Majestic also requests that the trial court's judgment be affirmed because West Valley City's brief fails to comply with Utah Rule of Appellate Procedure 24(a)(7), requiring citation to the record for statements of fact. Extensive quotations from numerous case authorities and treatises, while helpful, cannot substitute for the development of appellate arguments explicitly tied to the record before us. We remind counsel that it is our prerogative to affirm the lower court decision solely on the basis of failure to comply with the Utah Rules of Appellate Procedure. *See, e.g., Amica Mut. Ins. Co. v. Schettler*, 768 P.2d 950, 957 (Utah App.1989); *Demetropoulos v. Vreeken*, 754 P.2d 960, 961 (Utah App.), *cert. denied*, 765 P.2d 1278 (Utah 1988).

The court has been aided in its consideration and resolution of the issues by Majestic's brief, complete with adequate citations to the record

and inclusion of pertinent excerpts from the record in its Addenda. We decline in this instance to exercise our discretion to affirm solely on the basis that the City's brief is not in compliance with Rule 24(a)(7).

2. Of course, the parol evidence rule is not classically a rule that is substantive *or* procedural. As its very name suggests, it is a rule of *evidence*. Concerns about evidence must be voiced to the trial court in timely fashion in order to preserve the matter for appellate review. *See* Utah R.Evid. 103(a)(1). That the parol evidence rule developed at common law as a principle of contract interpretation and is not a creature of the formal rules of evidence does not change our analysis. Insistence on a timely objection gives the trial court a chance to consider the objection, decide if it is well-taken, and permit

No objection was raised at trial to the testimony of the three witnesses who were involved in the initial negotiation and execution of the Prudential and Lockhart leases. These witnesses testified that the formula for amortizing the construction costs of the buildings was included to fix an initial monthly rental amount and to escalate monthly rental payments at certain intervals, and not simply to provide for repayment of the actual construction costs. This provision would have the effect of increasing the total amount paid under the Prudential and Lockhart leases by increasing the monthly amount for the duration of the leases. Thus, Majestic would actually receive more than the principal amount and associated interest for its construction costs.

■ West Valley City argued that the increases in the monthly rental amounts worked to accelerate the total amount due, but not to escalate the total amount due. According to West Valley City's theory, once the precise amount of construction costs, plus interest, was recovered, Prudential's and Lockhart's obligation to pay "rent" for the improvements would terminate.[3]

■ The trial court extensively relied on the parol evidence to find that Majestic was entitled to compensation for the taking of its leasehold interests in the buildings subject to the Prudential and Lockhart leases. The court agreed with the position ad-

vanced by Majestic, i.e., that the escalation provisions of the leases augmented the total amount to be paid over the full lease term. Thus, the Prudential and Lockhart leases presented "bonus value" to Majestic and were not merely "pass-through" leases. Majestic continued to pay $750 to the Pickrells, and continued to receive $750 collectively from Prudential and Lockhart, each lease being subject to adjustment, *for the ground*. However, Majestic's income from the property continued to increase as the construction cost repayment increased, creating a bonus value in the leasehold. Viewing the evidence in the light most favorable to the court's finding, as we must, we hold the finding of value in Majestic's leasehold not to be clearly erroneous, and to be supported by substantial and competent evidence, and therefore must allow the finding to stand undisturbed.

## AWARD FOR TAKING OF THE LAND

In addition to attacking the finding of bonus value in the land and in the improvements, the City challenges the amount of the court's award for Majestic's interests in the land and in the improvements and buildings.[4] The City argues that the court did not rely upon parol evidence in resolution of these issues and we should therefore apply a less deferential standard of review. Indeed, when reviewing the trial court's conclusions of law, we accord them no particular deference, but apply a correc-

the fact-finder to have all the evidence it should have and no evidence it should not have. Moreover, rigid adherence to this precept also forecloses the strategy of not objecting and waiting to see how the case is ultimately decided, with a ready issue for appeal if the result at trial proves displeasing. *See State v. Morgan,* 813 P.2d 1207, 1209 (Utah App.1991) (party not entitled to both benefit of not objecting at trial and appellate review of issue).

3. While no objection was raised to the parol evidence of the parties' intent regarding the construction cost escalation clauses, we note that West Valley City's position would work a commercially absurd result. If escalation of monthly payments served only to accelerate the repayment of construction costs, the construction costs would be paid in full several years before the expiration of the lease. Thus, Majes-

tic would receive no benefit from the property for several years. We cannot conceive that commercially sophisticated parties, such as these, would intend such a result. Against this background, we would easily conclude, as a matter of law, that the lease was not ambiguous and provided for escalation, not merely acceleration, of payments. Thus, if there was any error in admission of the parol evidence, it would be harmless.

4. Both parties cite *State Road Comm'n v. Brown,* 531 P.2d 1294, 1296 (Utah 1975), as establishing the criteria for awarding compensation for a leasehold interest. We see no error in the court's application of *Brown* and expressly reject the claim of double-payment alluded to in briefing. We decline to further address this issue. *See State v. Carter,* 776 P.2d 886, 888 (Utah 1989) (appellate courts not required to treat each issue in writing).

tion of error standard. *Turnbaugh v. Anderson*, 793 P.2d 939, 941 (Utah App. 1990).

Distillation of West Valley City's claims reveals a common theme. While the City strains to attack the court's conclusions of law, it actually does so as a guise to challenging the court's factual findings. The essence of the City's argument is that the evidence did not support the court's finding that Majestic had an interest in the land value. The court's factual findings and legal conclusions are set forth in commendable detail, and are accompanied by a lengthy memorandum decision. The appellate courts of this state have repeatedly required trial courts to provide a particularized statement of factual findings and legal conclusions. *See, e.g., Acton v. Deliran*, 737 P.2d 996, 999 (Utah 1987); *State v. Lovegren*, 798 P.2d 767, 771 (Utah App. 1990). The trial judge in the instant case more than met the spirit and letter of this requirement.

In order to successfully challenge the trial court's decision, where it is premised on factual interpretation of the lease, the City must begin by undertaking the arduous and painstaking marshaling process discussed early in this opinion. After marshaling the evidence supporting the trial court's findings, the City must then show that these same findings are "so lacking in support as to be 'against the clear weight of the evidence,' thus making them clearly erroneous." *Mountain States Broadcasting v. Neale*, 783 P.2d 551, 553 (Utah App. 1989) (citations omitted). The City asserts it has "met its burden of marshalling all evidence regarding Majestic's share of the value of the land." We disagree.

■ We do not take issue with the City's claim that its brief contains "extensive quotations from the record." However, the marshaling concept does not reflect a desire to merely have pertinent excerpts from the record readily available to a reviewing court. The marshaling process is not unlike becoming the devil's advocate. Counsel must extricate himself or herself from the client's shoes and fully assume the adversary's position. In order to properly discharge the duty of marshaling the evidence, the challenger must present, in comprehensive and fastidious order, every scrap of competent evidence introduced at trial which *supports* the very findings the appellant resists. After constructing this magnificent array of supporting evidence, the challenger must ferret out a fatal flaw in the evidence. The gravity of this flaw must be sufficient to convince the appellate court that the court's finding resting upon the evidence is clearly erroneous.

"Appellants often overlook or disregard this heavy burden." *Id.* In the present case, appellant has acknowledged the requirement but misperceived it. *See Heinecke v. Department of Commerce*, 810 P.2d 459, 464 (Utah App.1991). As in *Heinecke*, the City has presented a general catalogue of evidence. What the City has *not* done is to correlate particular items of evidence with the challenged findings and convince us of the court's missteps in application of the evidence to its findings. The findings, then, have not been shown to be clearly erroneous. In the instant appeal, the challenge to the legal conclusions rises and falls with the factual findings sought to be challenged. Accordingly, we leave undisturbed the court's findings and the conclusions based thereon.[5]

## WAIVER OF RIGHT TO APPEAL

■ Majestic also asserts that West Valley City has waived the right to appeal the award for taking of the buildings and improvements by paying a substantial amount to Majestic. Majestic's claim is untenable. Majestic selectively quotes and relies on easily distinguishable language from *Jacobsen, Morrin & Robbins Constr.*

---

5. We recognize that legal conclusions premised on fully correct and well-supported factual findings may themselves be wholly erroneous. However, this is not a case where we are presented with the alternative argument that even if the factual findings withstand appellate review, the court's legal conclusions are in error for other reasons. We perceive no legal error in the trial court's legal conclusions and decline to extend our analysis to a full independent review of the court's conclusions when the City has failed to so posture its challenge.

Co. v. St. Joseph High School Bd. of Fin. Trustees, 794 P.2d 505 (Utah App.1990), to support its argument.

In Jacobsen, the court stated "if a judgment is voluntarily paid, which is accepted, and a judgment satisfied, the controversy has become moot and the right to appeal is waived." Id. at 506 (quoting Jensen v. Eddy, 30 Utah 2d 154, 156, 514 P.2d 1142, 1143 (1973)). The defendant in Jacobsen fully paid a judgment and proffered a satisfaction of judgment, which was executed. Neither party suggested any possibility of appeal. The defendant later appealed, and the plaintiff successfully sought to dismiss the appeal. The defendant alleged that the appeal involved issues distinct from the judgment, and claimed that the appeal should not be dismissed. The defendant relied on the doctrine that one may partially fulfill a judgment when the portion paid can clearly be attributed to a claim which is entirely separate and distinct from the issues appealed. See Jensen, 30 Utah 2d at 157, 514 P.2d at 1143.

West Valley City offered a partial satisfaction to Majestic, which was rejected by counsel for Majestic, who claimed that a partial satisfaction cannot be made for a specific portion of the judgment. A revised statement of partial satisfaction was executed. Majestic insisted on deletion of any reference to specific portions of the controversy. Majestic and the City stipulated that neither party waived any rights to appeal. Majestic now seeks to avoid the effect of the very language included to allay its own concerns—a tactic that is not only untenable but quite unnecessary given the strength of its position on the merits. We hold that the partial satisfaction did not waive West Valley City's right to this appeal.[6]

## CONCLUSION

Because West Valley City has failed to properly marshal the evidence and show the court's findings to be clearly erroneous, the court's factual findings remain undisturbed. No challenge can be raised to the parol evidence relied on by the trial court when no objection was made at trial. We see no error in the court's legal conclusions. The court's decision and award are affirmed.

BENCH, P.J., and GREENWOOD, J., concur.

---

6. In condemnation proceedings, Utah law provides a mechanism for prejudgment payment of a condemnation award. See Utah Code Ann. § 78–34–9 (1987). We cannot determine from the record before us whether this statute is directly applicable. However, we believe the statute evidences a legislative desire that condemnation awards, to the extent not disputed, be paid as speedily as possible even though disagreement remains about whether more should be paid. West Valley City's tender of partial satisfaction seems fully consistent with this policy.