Carolyn REINBOLD, Plaintiff and Appellant,

v.

UTAH FUN SHARES, a Nevada limited partnership, et al., Defendants and Appellees.

No. 920037–CA.

Court of Appeals of Utah.

March 31, 1993.

Floyd W. Holm (argued), Chamberlain & Higbee, Cedar City, for plaintiff and appellant.

Michael W. Park (argued), The Park Firm, St. George, for defendants and appellees.

Before BILLINGS, GARFF and GREENWOOD, JJ.

## OPINION

GREENWOOD, Judge:

Plaintiff, Carolyn Reinbold (Reinbold) appeals from a judgment holding that her trust deed interest in certain real property was junior to that of defendant, Brian Head Equities (BHE). We affirm the trial court's determination.

## BACKGROUND

On February 7, 1983, Utah Fun Shares (UFS), a Nevada limited partnership, purchased Unit 5A of the Southview Lodge condominiums at Brian Head, Utah, from Southview Lodge Partnership (Southview). UFS executed a note in favor of Southview for $65,000, and the note was secured by a trust deed (initial trust deed) on Unit 5A naming Southview as beneficiary. The initial trust deed was recorded on February 7, 1983. Southview later assigned the initial trust deed and note to one of its partners,

Richard L. Smith and his wife, Loretta E. Smith. This assignment was recorded on July 15, 1983.

On June 19, 1983, UFS executed twenty-three time share trust deeds on Unit 5A as security for notes with a total principal sum of $122,100, payable to All American Realty, Inc. (All American). The time share trust deeds were recorded on July 15, 1983. All American, a Nevada real estate company, was the general partner of UFS. Charles Van Pelt (Van Pelt) was president and broker-owner of All American. All American immediately assigned its interest in the time share trust deeds to All American Mortgage Company Investment Trust II (Trust II), a real estate investment entity created by Van Pelt. These assignments were recorded on July 15, 1983.

Shortly before the time share trust deeds were recorded, the Smiths made a demand for payment from UFS on the initial trust deed and note. The note required two equal payments of $32,500, and the due date for the first payment had passed. Van Pelt told the Smiths that UFS was unable to make the payments, but he offered to "roll" the initial trust deed note into Trust II where it would earn approximately 16% to 18% interest for the Smiths. A document entitled "Demand for Payment" indicated that the Smiths would provide the original initial trust deed documents and a request for reconveyance "upon receipt of payment in full." This document also included the Smiths' agreement to the transfer of payoff funds into Trust II. Van Pelt provided two receipts for the Smiths dated July 19 and 20, 1983, respectively, which indicated that checks in an amount sufficient to satisfy the $65,000 note had been deposited into Trust II. Although the original cancelled checks were never produced, an account ledger and bank statement were introduced at trial to substantiate the deposit of the Smiths' funds. Richard Smith maintained, however, that Van Pelt merely moved the funds around in different accounts, and never actually paid the principal and interest due on the initial trust deed note.

The initial trust deed was never reconveyed, nor was there an action to compel such reconveyance. The Smiths subsequently assigned their interest in the initial trust deed and note to BHE, a Nevada corporation of which Richard Smith is president. This assignment was recorded on January 8, 1985. BHE initiated nonjudicial foreclosure proceedings pursuant to the initial trust deed, and a trustee's sale was scheduled in May of 1985.

Because of the foreclosure proceedings, Mark Alden, trustee of Trust II, filed suit against UFS, Southview, the Smiths, BHE, and Southern Utah Title Company, seeking to enjoin the foreclosure sale, claiming UFS had defaulted on the time share trust deed obligations and asking for a determination of the lienholders' relative priorities. On May 17, 1985, a hearing was held on Trust II's motion for a preliminary injunction. At that hearing, Van Pelt, on behalf of UFS, confessed judgments in favor of Trust II in the amount of $162,405.46 and BHE in the amount of $86,097.58. In addition, the court ordered that any foreclosure proceeding against the condominium would be postponed until the court determined the relative priorities of the parties. Counsel for Trust II drafted the judgment and order that was signed and entered on July 16, 1985.

Trust II filed a motion for summary judgment on June 27, 1985, claiming that there was no genuine issue of material fact regarding the priority of interests in the condominium. The motion was denied. In June of 1988, Reinbold succeeded to Trust II's interest as beneficiary of twenty-two of the twenty-three time share trust deeds, by executing on a judgment lien she had obtained against Trust II. Finally, BHE filed for Chapter 11 bankruptcy relief in March of 1989.

Reinbold successfully sought relief from the bankruptcy's automatic stay, and the parties proceeded to trial to determine their relative priorities in Unit 5A. After the trial was completed, the trial court found that BHE, as the beneficiary under the initial trust deed which was recorded first, held the senior lien position as to Unit 5A.

The court found that Reinbold acquired Trust II's interest in the time share trust deeds which were recorded after the initial trust deed, placing her in a junior lien position. The court also found that no reconveyance of the initial trust deed was ever recorded or even properly requested, and no notice of any claim of extinguishment of the debt owed on the initial trust deed had ever been filed. In addition, the court found that Southview and the Smiths had no interest in Unit 5A, because they had assigned their rights to others.

Pursuant to these findings, the court held that UFS remained indebted to BHE for the amount previously confessed and reduced to judgment in July of 1985. The court concluded that this prior judgment was binding as the law of the case. The court also found that Reinbold had failed to prove by a preponderance of the evidence that the initial trust deed note had been extinguished. Finally, the court ruled that BHE as the senior lien holder, could commence foreclosure proceedings against Unit 5A, and Reinbold would retain the junior judgment for $162,405.46 that was confessed by UFS in July of 1985.

Reinbold appeals, claiming the trial court erred (1) by finding that the debt secured by the initial trust deed had not been extinguished, and (2) by holding that the initial trust deed was a valid lien with priority over Reinbold's lien.[1]

## STANDARD OF REVIEW

When an appellant is essentially challenging the legal sufficiency of the evidence, a clearly erroneous standard of appellate review applies. Utah Rule of Civil Procedure 52(a) provides: "Findings of fact, whether oral or documentary shall not be set aside unless clearly erroneous, and due regard shall be given to the opportunity of the trial court to judge the credibility of the witnesses." "A finding attacked as lacking adequate evidentiary support is deemed 'clearly erroneous' only if we conclude that the finding is against the clear weight of the evidence." *Reid v. Mutual of Omaha Ins. Co.,* 776 P.2d 896, 899–901 (Utah 1989) (citations omitted). *See Grayson Roper Ltd. v. Finlinson,* 782 P.2d 467, 470 (Utah 1989). We review the evidence in a light most favorable to the trial court's findings and affirm if there is a reasonable basis for doing so. *Gillmor v. Gillmor,* 745 P.2d 461, 462 (Utah App.1987), *cert. denied,* 765 P.2d 1278 (Utah 1988). A prerequisite to an appellant's attack on findings of fact is the requirement that appellant marshall all the evidence in support of the findings in order to demonstrate "that the evidence, including all reasonable inferences drawn therefrom, is insufficient to support the findings." *Grayson,* 782 P.2d at 470. *See Reid,* 776 P.2d at 899. An appellant's challenges to the trial court's legal conclusions, "on the other hand, are reviewed for correctness and are not given special deference." *Bountiful v. Riley,* 784 P.2d 1174, 1175 (Utah 1989). *See Grayson,* 782 P.2d at 470.

## ANALYSIS

### Debt Extinguishment

■ Reinbold argues that the findings regarding the validity of the initial trust deed were clearly erroneous. Specifically, Reinbold challenges the court's finding that the debt owed on the initial trust deed was never extinguished, thereby leaving BHE in a first lien position as to Unit 5A. Reinbold claims there is insufficient evidence to support this finding.

As a precursor to her argument, Reinbold marshalled the following evidence as supportive of the trial court's findings:

1. The public record establishes that the initial trust deed was recorded prior to the time share trust deeds;

2. UFS confessed judgment in favor of BHE in July of 1985 pursuant to the note secured by the initial trust deed; and

3. Neither a deed of reconveyance nor an action to compel reconveyance was

---

**1.** Reinbold also appeals from the trial court's denial of Trust II's motion for summary judgment which took place prior to her succeeding to Trust II's interest. We address this issue in footnote 3 of this opinion.

ever instituted by Reinbold's predecessors.

Despite these facts, Reinbold claims the initial trust deed was extinguished by operation of law upon payment of the promissory note. She argues that because payment extinguished the debt owed on the trust deed, the public record is immaterial and should be disregarded by the trial court. Lastly, she claims the July 1985 judgment was intended to be provisional in nature and, therefore, could not operate as the law of the case at the later trial.

Reinbold's marshalling of the evidence, however, is incomplete. It fails to include the relevant testimony of Richard Smith, presented at trial through reading portions of his deposition. In his testimony, Smith described the transaction between Van Pelt and himself as a paper shuffling exercise. Smith said that when Van Pelt informed him of UFS's inability to make timely payments on the initial trust deed note, Van Pelt encouraged him and his wife to "roll" the funds into Trust II in order to earn a substantial interest rate.

Furthermore, the evidence presented by Reinbold was equivocal and conflicted with Smith's testimony. Reinbold did not provide competent evidence of payment on the note, such as cancelled checks, but only carbons of such purported checks, which the court ruled were inadmissible. Reinbold's attempt to show a transfer of funds from one account under Van Pelt's control to another account under his control as payment on the note was also inconclusive. A statement from All American's credit union account was introduced into evidence listing cancelled checks that equaled the sum allegedly paid to the Smiths. A handwritten ledger allegedly kept for Trust II accounting purposes and indicating transfers in the same amount was also presented. Although these documents evidence some type of transaction between All American and Trust II, both entities controlled by Van Pelt, they do not necessarily indicate a payment to the Smiths. In addition, their significance was controverted by Smith's testimony that he never received the amount owed on the initial trust deed note and that the documents merely illustrate Van Pelt's paper shuffling. Smith said he received one or two small interest payments which Van Pelt claimed came from the Trust II account, but the balance owed on the initial trust deed note was *never* paid. The trial court, presented with conflicting evidence and testimony, was entitled to determine which was more credible. *Grayson Roper,* 782 P.2d at 470. Its decision that the weight and credibility of the evidence did not establish that the debt was extinguished was not clearly erroneous.

■ Reinbold also argues that Van Pelt's confession of judgment on behalf of UFS in July of 1985 was intended to be provisional in nature, and the court should not have relied upon it as the law of the case in its determination at trial. As a legal question, when a court is presented with an issue that is identical to one already ruled upon by another trial court in the same case, "ordinarily one judge of the same court cannot properly overrule the decision of another judge of that court." *Richardson v. Grand Cent. Corp.,* 572 P.2d 395, 397 (Utah 1977). However, "[a] second judge may reverse the first judge's ruling if the issues decided by the first judge are presented to the second judge in a 'different light.'" *Sittner v. Big Horn Tar Sands & Oil, Inc.,* 692 P.2d 735, 736 (Utah 1984).

In this case, the earlier judgment's clear language does not indicate any intention that it was to be provisional. The written judgment and order clearly state that "[p]ursuant to the confession of judgment by Defendant Utah Fun Share ... judgment ... is entered against Defendant Utah Fun Shares in favor of Defendant Brian Head Equities in the principal sum of Sixty-five Thousand Dollars ($65,000), plus interest." The order also stayed the foreclosure sale on Unit 5A until such time as the parties' relative priorities in the property were determined.

The trial court held that the prior judgment constituted the "law of the case" as to USF's liability to BHE. Nevertheless, Reinbold now claims that despite the clear

and unequivocal language in the judgment drafted by counsel for Trust II, her predecessor in interest, it was intended to be provisional as to all issues.[2] Furthermore, Reinbold fails to address the underlying question as to why Van Pelt, on behalf of UFS, would confess judgment in favor of BHE and Trust II if he continued to claim the debt owed to the Smiths was extinguished in 1983. Obviously, such an assertion and a confession of judgment are contradictory.

We note that, even if the trial court erred in designating the prior order as controlling, that error would be harmless. At the subsequent trial the court heard evidence on all issues relating to UFS's liability on the initial trust deed note. The court essentially allowed Reinbold to retry the issues which UFS's earlier confession of judgment in favor of BHE should have resolved, including whether extinguishment had occurred. Therefore, even though the court's conclusions of law label the prior judgment as "the law of this case," Reinbold was given an opportunity to present an array of testimonial and documentary evidence that contradicted the earlier order, and the court entered findings addressing that evidence. Therefore, even if the trial court inappropriately declared the earlier judgment as law of the case, that declaration had no impact on the actual outcome of the case.

■ We conclude that the evidence was legally sufficient to support the trial court's findings that the debt secured by the initial trust deed had not been extinguished,[3] and that the court's designation of the prior judgment as the law of the case was not harmful error, if indeed, it was error.

### Lien Priority

■ Because the debt secured by the initial trust deed was not extinguished, the public record becomes relevant to decide BHE's and Reinbold's relative priorities. The owner of Southern Utah Title Company testified that his company served as trustee for the initial trust deed on Unit 5A. His company received a letter requesting issuance of title insurance on the time share trust deeds, but never received a request for reconveyance of the initial trust deed held on Unit 5A. Without payment of the debt secured by the initial trust deed, any successor beneficiary to that deed clearly retains priority over later recorded liens on the same subject property. *Utah Farm Prod. Credit Ass'n v. Wasatch Bank,* 734 P.2d 904, 906 n. 2 (Utah 1986) (per curiam); *see* Utah Code Ann. § 57–3–2 (1990).

Therefore, the court properly concluded that the initial trust deed continued as the first lien on Unit 5A. " '[I]t is of the very nature and essence of a lien, that no matter into whose hands the property goes, it passes cum onere.' " *Utah Farm,* 734 P.2d at 906 (quoting *United States v. Bess,* 357 U.S. 51, 57, 78 S.Ct. 1054, 1058, 2 L.Ed.2d 1135 (1958)). The initial trust deed and the subsequent assignments to the Smiths and BHE were properly recorded. These documents carried with them the presumption that the "beneficiary of an interest created or described by [them] acted in good faith at all relevant times." Utah Code Ann. § 57–4a–4(1)(f) (1990).

On the basis of the foregoing analysis, we affirm the trial court's ruling which determined BHE's interest in Unit 5A via the initial trust deed to be superior to Reinbold's interest as reflected in the time share trust deeds.

BILLINGS and GARFF, JJ., concur.

---

2. Van Pelt confessed judgment on behalf of UFS in his capacity as president of UFS's general partner, American Realty. However, Van Pelt also created Trust II. Therefore, he was a prime player both as debtor and creditor in these convoluted transactions.

3. Similarly, the court did not err in denying Reinbold's earlier motion for summary judgment, because the pleadings and affidavits presented a material question of fact on the issue of payment of the note. Testimonial evidence and affidavits from Smith and Van Pelt were in conflict, and the documentary evidence was inconclusive.