Susan SLATTERY, Plaintiff
and Appellee,

v.

COVEY & CO., INC., and Almon Covey,
Defendants and Appellants.

No. 910570–CA.

Court of Appeals of Utah.

July 7, 1993.

David R. King and Steven G. Loosle, Salt Lake City, for defendants and appellants.

Ralph C. Petty and Richard Leedy, Salt Lake City, for plaintiff and appellee.

Before GREENWOOD, JACKSON and RUSSON, JJ.

GREENWOOD, Judge:

Defendant Covey & Co., Inc. (Covey & Co.) appeals the trial court's award of damages to plaintiff, Susan Slattery (Slattery), and the court's denial of defendant's counterclaim. We affirm in part, reverse in part and remand.

## FACTS

We state the facts in the light most favorable to the trial court's findings. *Van Dyke v. Chappell,* 818 P.2d 1023, 1024 (Utah 1991). Covey & Co., a licensed securities broker-dealer, employed Slattery, a licensed stockbroker, from approximately July 20, 1987 through October, 1988. Co-vey & Co. hired Slattery primarily to act as an assistant to Ray Spilsbury (Spilsbury), another stockbroker at Covey & Co., anticipating that he would be doing a large volume of business. In addition, Slattery worked at Covey & Co. in an independent contractor capacity as a broker. Covey & Co. agreed to pay Slattery $2,000 per month for her work assisting Spilsbury and required Spilsbury to reimburse Covey & Co. for one-half of that amount.

Slattery and Covey & Co. executed a "Contract for Performance of Services" which described Slattery's duties as an independent contractor/broker. Pursuant to this contract, Slattery agreed to remunerate Covey & Co. for certain expenses including: licensing fees, 50% of telephone charges, and 50% of insurance fees. Slattery also agreed to be responsible for her own customers' accounts, including timely payment for securities purchased in those accounts. If a customer ordered securities and did not pay for them within seven working days, Covey & Co. would "sellout" the securities on the market and Slattery would be liable for any ensuing loss. This loss would be entered into Slattery's "error account," one of the accounts Covey & Co. maintained for each of its brokers in which Covey & Co. entered salary, charges or fees owed to Covey & Co., and any sellout losses or gains.

In late March of 1988, Slattery became aware that her supervisor, Spilsbury, was "floating" stock. One of Spilsbury's customers had apparently placed orders with him for between $35,000 and $50,000 worth of stock and had not paid for the stock. Because he could not afford a loss of that magnitude in his error account, Spilsbury was selling stock from one account to another, taking advantage of the seven day grace period for payment, in an attempt to keep the loss "afloat." Spilsbury hoped that given enough time, the customer would eventually pay the delinquent account.

Payment was not forthcoming, and by April of 1988, the negative balance in Spilsbury's error account was substantial and all of the accounts he was using to float

stock were frozen. Spilsbury asked Slattery to assist him in maintaining the float by locating individuals who would be willing to permit him to use their accounts to buy stock for a short period of time. Accommodating Spilsbury's request, Slattery opened an account for Edward Nielsen under her account number, and Spilsbury ordered 20,000 shares of Creative Realty stock and 5,000 shares of GHC International in Nielsen's name. The total purchase price, including commissions, was $22,727.23.

When payment for this transaction was not made within the required seven day limit, Covey & Co. sold out the shares for a total price of $6,325. The net sellout loss placed in Slattery's account was $16,402.23.[1]

Slattery assisted Spilsbury in another nominee trade, this time through her father's account. Again, the shares ordered were not paid for, and a loss of $2,400 was entered in Slattery's error account.

In July of 1988, Slattery concluded that Spilsbury's floats were becoming unmanageable, and she met with Covey & Co.'s Secretary/Treasurer, David Nelson (Nelson), to apprise him of the situation. She told him that one of Spilsbury's primary concerns was that he had involved other people in the floats and had left them with substantial financial liabilities. Nelson decided to rectify the problem by "bringing the float back to Covey & Co.," and assessing financial responsibility to Spilsbury. Slattery testified that because Nelson specifically agreed to "journal" the Nielsen loss from her error account to Spilsbury's, she thought the matter was resolved.

In September of 1988, Slattery discovered that the Spilsbury errors had not been journaled from her account and further, that Covey & Co. had terminated her salary in June. Apparently Covey & Co.'s compliance officer, Warren Ketcham, had determined that Spilsbury was not doing enough business to warrant paying for an assistant, and had therefore unilaterally ended Slattery's position. Slattery had not received any written or oral notice of this decision, nor had Spilsbury.

Slattery spoke with Covey & Co.'s president, Almon Covey (Covey), who reassured her that her salary would be reinstated retroactively and credited to her error account. However, Covey informed her that as controlling owner of Covey & Co. he would not permit Nelson to journal Spilsbury's errors from Slattery's account, despite the fact that Spilsbury had requested that he be held responsible for each float he had originated.

Attempts were made throughout September and October to work out Slattery's error account and salary dispute. At an October 31, 1988 meeting, Covey told her that she was not fired, but because Spilsbury was not doing enough business for Covey & Co. to justify an assistant, Spilsbury would probably have to be responsible for her entire salary in the future. On the following day, when Slattery called Nelson to find out what had been formally decided about her salary, he told her to seek other employment.

Soon after leaving Covey & Co., Slattery filed an action against Covey & Co. and Almon Covey claiming slander, libel and defamation. Covey & Co. counterclaimed for an alleged outstanding balance in her error account of $18,130.70. During trial, Slattery was permitted to amend her complaint to request an offset against her error account balance of the value of certain personal stock retained by Covey & Co.

After a bench trial, the trial court held that Slattery was not entitled to damages on her defamation claim and accordingly entered a no cause judgment for Covey & Co. However, regarding Covey & Co.'s counterclaim, the court held that Slattery was entitled to receive $10,801.35 from her error account after applying various credits and offsets. In particular, the court ruled:

---

**1.** Covey & Co. alleges that there was not a market for these shares at the time the sellout occurred, so they were purchased into Covey & Co.'s trading account by Keith Cannon, a trader at Covey & Co. Several months later, the shares were sold at a profit, and an undisclosed percentage of this profit was credited to Slattery's error account.

1. During Slattery's last four months of employment with Covey & Co., she performed services for which Covey & Co. had agreed to pay her;

2. Slattery was not paid for this period of time, and was entitled to a credit of $8,000 to her error account;

3. The amount of $16,402.23, representing a sellout of the Edward Nielsen account, should have been debited to Ray Spilsbury's account rather than Slattery's account;

4. The Edward Nielsen loss was not caused by either Slattery or her customer, but was a trade executed at Spilsbury's request;

5. Covey & Co. had agreed to transfer this loss to Spilsbury along with other losses Spilsbury had incurred;

6. Slattery was not responsible for a $2,400 sellout of Future Time stock that occurred under circumstances similar to those of the Edward Nielsen sellout;

7. Charges made to Slattery's error account for $452.40 in expenses incurred after she left Covey & Co. were improperly debited;

8. Slattery could present evidence of a balance owing on her error account after amending her complaint to conform to the evidence at trial;

9. Slattery was entitled to $6,847.50 for stocks in her accounts that Covey & Co. refused to release; and

10. Each party was responsible for their own attorney fees and costs.

## ISSUES

On appeal, Covey & Co. claims the trial court erred in (1) finding that Slattery was not responsible for the two sellouts which were debited to her error account, (2) finding Slattery was entitled to a salary credit of $8,000, (3) disallowing certain office expense debits as part of the error account balance, (4) allowing Slattery to amend her pleadings to conform to evidence that Covey & Co. owed her the value of her personally owned stocks, and (5) assigning a value to Slattery's securities based on insufficient evidence.

## ANALYSIS

Covey & Co. challenges both the sufficiency of the evidence supporting the court's factual findings and the correctness of the legal principles employed. An appellant challenging factual findings faces a substantial burden. Trial court's findings of fact will be affirmed if they are "based on sufficient evidence, viewing the evidence in the light most favorable to the trial court's construction." *West Valley City v. Majestic Inv. Co.*, 818 P.2d 1311, 1313 (Utah App.1991). In order to prevail, "the challenging party must marshall *all* relevant evidence presented at trial which tends to support the findings. *Id.* That party must then show that these same findings are "so lacking in support as to be 'against the clear weight of the evidence,' thus making them clearly erroneous." *Id.* at 1315 (citations omitted). The trial court's conclusions of law "are accorded no particular deference; we review them for correctness." *Doelle v. Bradley*, 784 P.2d 1176, 1179 (Utah 1989). With these principles in mind, we turn to the issues raised by appellant.

### Sellout Errors

With respect to the sufficiency of the evidence supporting the factual findings, Covey & Co. alleges that the weight of the evidence established that Spilsbury was not Slattery's supervisor, and therefore his "directions" to her concerning the creation of nominee accounts to help perpetuate the float carried no authority. Covey & Co. further contends that the evidence does not support the finding that Covey & Co. agreed to transfer the sellout errors from Slattery's account. Finally, regarding the legal correctness of the court's holding, Covey & Co. argues that Slattery's contract unequivocally places liability upon her for all losses in her customer accounts, and the court erred by finding that a superseding oral agreement voided this contractual provision.

The trial court held that Slattery was not responsible for the Nielsen and Slattery

sellout errors, and that these losses should have been ascribed to Spilsbury's error account. In addition, the court found that Covey & Co. had agreed to release Slattery from any contractual obligation to be liable for these particular losses in her customer accounts.

Although the record contains some evidence that conflicts with the testimony that Slattery and Spilsbury presented, "[t]he trial court, presented with conflicting evidence and testimony, was entitled to determine which was more credible." *Reinbold v. Utah Fun Shares*, 850 P.2d 487, 490, (Utah App.1993) (citation omitted). Testimony of both Slattery and Spilsbury was to the effect that the transactions in question were at Spilsbury's direction and that Slattery acted as Spilsbury's subordinate. Spilsbury specifically acknowledged financial responsibility for the "floats." Further, Slattery testified that Nelson, acting with apparent authority, agreed that the losses would be removed from her account and transferred to Spilsbury. *See Zions First Nat'l Bank v. Clark Clinic Corp.*, 762 P.2d 1090, 1094–95 (Utah 1988).

In addition, there is evidence to support the determination that the parties effectively renegotiated the terms of the written agreement when Nelson, secretary/treasurer and co-owner of Covey & Co., agreed to journal the Nielsen and Slattery errors to Spilsbury's account. *See Prince v. R.C. Tolman Const. Co., Inc.*, 610 P.2d 1267, 1269 (Utah 1980) (parties are as free to renegotiate new terms or make supplemental agreements as they were to make initial agreement). The agreement to remove the sellout debits from Slattery's account and place them in Spilsbury's account relieved Slattery of responsibility for these amounts. A fact finder could find adequate consideration for this agreement based upon the fact that Slattery continued to work for Covey & Co. for four months, until she discovered Covey & Co. was refusing to honor its earlier commitment. Slattery also desisted from taking any action to recover the funds from Spilsbury, who continued to work for Covey & Co. at least through the trial of this matter.

Alternatively, while the court did not directly address the issue, it appears that the written contract applied only to Slattery's activities as a broker, and not to actions of Slattery as Spilsbury's assistant. This theory would allow us to affirm the trial court's decision because the contract did not prohibit Nelson's agreement to transfer the float to Spilsbury. *Weber v. Snyderville West*, 800 P.2d 316, 320 (Utah App. 1990) (citation omitted) (an appellate court may affirm the trial court on any proper ground), *cert. denied*, 815 P.2d 241 (Utah 1991).

We conclude that there is a sufficient basis in the evidence to support the court's factual findings regarding Slattery's lack of responsibility for the sellout losses and that the court did not err in concluding that Covey & Co. could not continue to debit her error account for those losses.

### Slattery's Salary

■ Covey & Co. also claims the trial court erred when it determined Slattery was entitled to her $2,000 per month salary for the months of July through October. In the alternative, Covey & Co. argues that if Slattery were entitled to payment for these months, Covey & Co. should only be liable for half the amount, and Spilsbury should be liable for the rest. Our review of the record supports the trial court's findings in regard to her salary.

The evidence showed that Slattery's error account was ordinarily credited with the full $2,000 per month from Covey & Co. Slattery testified that she continued to perform the duties she was hired to perform until the end of October, 1988. She also testified that Covey had promised to reinstate her salary retroactively for the months at issue.

Slattery's testimony presents a sufficient basis upon which the trial court could find that Slattery continued to perform the duties for which she was hired pursuant to her agreement with Covey & Co. Additionally, various witnesses corroborated Slattery's testimony of her numerous attempts to meet with Almon Covey to resolve the

salary dispute during the months of September and October. This evidence, added to the lack of notice to Slattery that her salary was discontinued, supports the court's finding that Slattery continued to work for Covey & Co. through October 1988, pursuant to her original agreement. Therefore, the court's finding that Slattery was entitled to a four month salary credit totalling $8,000 has a sufficient basis in the evidence.

With respect to the apportionment of liability argument, we conclude that the trial court did not err in determining that for the purposes of this lawsuit, Covey & Co. was primarily responsible for Slattery's salary.[2]

### Slattery's Expenses

■ Covey & Co. argues that the trial court erred in disallowing certain expenses as part of the error account balance. Covey & Co. stipulated to the following adjustments as expenses incurred after Slattery was terminated:

$102.78 for November health insurance;

$102.78 for December health insurance; and

$6.68 for November AT & T charges.

The trial court's findings also give Slattery credit for a $19.88 payroll adjustment and $26.44 in telephone charges for October. These credits constitute error because the payroll adjustment was actually a credit to Slattery's error account, and the long distance charges occurred during the time when Slattery was still working with Covey & Co. Therefore, these amounts should not be included as credits.

Additionally, the findings credit Slattery's account with $194 for a licensing fee. This credit is appropriate because Slattery's written employment contract states that Covey & Co. will pay state registration fees for a broker who generates at least $300 in gross commissions. The court could reasonably find from the testimony at trial that Slattery made substantially more than $300 in gross commissions. The total credit to which Slattery appears to be entitled is the following:

$102.78 for November health insurance

$102.78 for December health insurance

$6.68 for December AT & T charges and

$194.00 for 1988 state registration fees

$406.24 = Total credits to error account

We remand this particular issue to the trial court for entry of findings consistent with this opinion.

### Amended Complaint

■ Next, Covey & Co. claims the trial court abused its discretion in allowing Slattery to amend her complaint to conform with the evidence presented at trial regarding the value of Slattery's personal securities. "Leave to amend a pleading[3] is a matter within the broad discretion of the trial court and we do not disturb its ruling unless appellant establishes an abuse of discretion resulting in prejudice." *Chadwick v. Nielsen*, 763 P.2d 817, 820 (Utah App.1988) (citations omitted).

We conclude that the trial court did not abuse its discretion in allowing Slattery to amend her complaint to conform to the evidence at trial. The amendment did not result in unavoidable prejudice to Covey & Co. Although Covey & Co. objected to the testimony Slattery presented regarding the value of her personal securities that Covey & Co. had refused to deliver to her, Covey & Co. did not request a continuance in order to prepare to meet this evidence. "[T]he failure of the opposing party to seek

---

**2.** Whether or not Covey & Co. may seek reimbursement from Spilsbury under their separate agreement is an issue not presented to the trial court or to this court.

**3.** Utah Rule of Civil Procedure 15(b) provides: If evidence is objected to at the trial on the ground that it is not within the issues made by the pleadings, the court may allow the pleadings to be amended when the presentation of the merits of the action will be subserved thereby and the objecting party fails to satisfy the court that the admission of such evidence would prejudice him in maintaining his action or defense upon the merits. The court shall grant a continuance, if necessary, to enable the objecting party to meet such evidence.

such a continuance is a factor indicating that the opposing party was not prejudiced as a result of the amendment." 27 Fed. Pro., L.Ed. § 62:306 (1984).

In addition, evidence in the record indicates Covey & Co. had notice Slattery was seeking the return of her personal accounts. Slattery testified that she had demanded the return of these accounts, but Covey & Co. had refused because of the amount owing in her error account. Covey & Co. was able to place a hold on Slattery's personal accounts as an offset against amounts owing in her error account pursuant to the written employment agreement. Allegations in Covey & Co.'s counterclaim against Slattery specifically cite to the paragraph in the agreement which discussed an offset in favor of Covey & Co. from the brokers' personal accounts. In addition, it was foreseeable and logical that if the counterclaim was resisted with evidence showing the error account balance to be incorrect, there might be sums owing to Slattery either in her error account or from personal accounts that were held as an offset against the error account. It is unlikely that Covey & Co. was unaware of the personal accounts and their relative values given the evidence they were holding them as an offset against Slattery's error account.

### Value of Personal Accounts

■ Covey & Co.'s final claim of error concerns the sufficiency of evidence supporting the valuation of Slattery's personal accounts. We agree that the record before us does not demonstrate a reasonable basis for the stock's valuation to support the trial court's findings.

Slattery testified that Covey & Co. had refused to release three personal securities accounts to her. The accounts were Bellwether, Future Time, and Far East Trading. When asked whether she had kept track of the value of these stocks, Slattery answered that she had "from time to time."

She testified that the value of her Future Time account was $360 and the value of Bellwether was "approximately $1,400, maybe $1,500." Slattery also testified that the Far East Trading account had no value, but she wanted the stock returned to her.

After the trial, Slattery submitted an affidavit which set forth the number of shares and values which differed from those she had testified to at trial. The trial court awarded her, as part of the offset against her error account, the total figure presented in the affidavit of $6,847.50. However, the affidavit did not provide an objective basis or foundation for the stock's valuation. In addition, the affidavit failed to explain the difference in values between the trial testimony and the affidavit. For these reasons, we conclude that the valuation assigned to Slattery's personal accounts does not have a reasonable basis in the evidence and, therefore, is clearly erroneous. Slattery, therefore, is not entitled to judgment for the $6,847.50 offset against Covey & Co.

### CONCLUSION

There was a sufficient basis in the evidence for the court's findings that Slattery was not responsible for either the Nielsen or Slattery sellout debits to her error account. Similarly, the court's findings regarding credits to her error account for unpaid salary and certain office expenses were also supported by a reasonable basis in the evidence with the exception of a few minor adjustments. The trial court did not abuse its discretion in allowing Slattery to amend her complaint to conform to evidence that she was owed the value of her personal accounts, but we determine that the evidence lacks a sufficient basis to support the value assigned to those personal accounts. Therefore, we reverse the trial court's judgment that Slattery is entitled to $6,847.50 for these accounts.[4]

---

4. Slattery also seeks attorney fees on appeal, based on the employment contract. However, she was not awarded attorney fees at trial and did not appeal from that determination. Because Slattery does not present any argument to support her request for fees on appeal, we decline to address the issue.

Affirmed in part and reversed and remanded in part for further proceedings consistent with this opinion.

JACKSON and RUSSON, JJ., concur.