424 P.2d 446

Leon FREHNER and Minnie C. Frehner dba Mountain West Gardens, and Leon C. Frehner, Plaintiffs and Respondents,

v.

Margaret MORTON, D. A. Skeen and Bertha K. Skeen, and Prudential Federal Savings & Loan Association, a corporation, Defendants and Appellants.

No. 10525.

Supreme Court of Utah.

Feb. 24, 1967.

Benjamin Spence, Salt Lake City, for appellants.

Allen M. Swan, Salt Lake City, for respondents

ELLETT, Justice:

Plaintiffs sued to collect for services rendered in landscaping around a newly constructed house owned by defendants Skeen in Summit Park, east of Salt Lake City, Utah. From a jury verdict and judgment thereon in favor of the plaintiffs, the defendants appeal.

The points urged are (1) that the court erred in ruling that the landscaping work comes within the laborers' and materialmen's lien statute; and (2) that the evidence shows that the defendants did not authorize the work done.

In the fall of 1964 the defendants Skeen obtained a loan from the defendant Prudential Federal Savings & Loan Association to finance the building of a house on a lot they owned in Summit Park, so that their married daughter, Margaret Skeen Morton, and her children would have a place to live. It is shown that Margaret was given permission to direct the construction according to her wishes and that she proceeded to oversee and make changes in the job as she desired. With Mr. Skeen's knowledge she engaged the plaintiffs to do the landscaping on the grounds, which included installation of a concrete waterfall and pool.

The statute under which plaintiffs claim authorizes a lien for labor and material used in the "* * * construction or alteration of, or addition to, or repair of, any building, structure or improvement upon land." (Section 38-1-3, U.C.A.1953.)

■ The purpose of this statute as applied to this case is to protect those who have added directly to the value of real property by performing labor or furnishing material upon it. (Stanton Transportation Company v. Davis, 9 Utah 2d 184, 341 P.2d 207.) The statute is intended and designed to prevent the owner of land from taking the benefits of improvements placed on his property without paying for the labor and material that went into them. (King Brothers, Inc. v. Utah Dry Kiln Company, 13 Utah 2d 339, 374 P.2d 254.)

■ Architects are also protected and have a lien when they have furnished plats, plans, maps, superintendence and so forth, or when they have rendered other like professional services at the instance of the owner or any other person acting by his authority as agent, contractor or otherwise. (See Headlund v. Daniels, 50 Utah 381, 167 P. 1170.)

Leon Frehner, one of the plaintiffs, was a professional landscape architect, and his wife, the other plaintiff, was a landscape contractor holding a license from the State of Utah as a specialty contractor. They designed and completed the landscaping in connection with the house being built by a general contractor. The defendants refused to pay on the grounds that they had not authorized the work. It is plain from the record that the defendant D. A. Skeen wanted his daughter, Margaret, and her children to have a home, that all should be in accordance with her desires, and that in conformity with this purpose she was given a comparatively free hand as to its construction. Mr. Skeen indicated that he had had previous unsatisfactory dealings with the plaintiff, Mr. Frehner. Notwithstanding this, he permitted Margaret to go ahead and obtain the plaintiff's services if she so desired. He also testified:

Q. * * *, when she told you she wanted to landscape the land, did you have any other conversation with her about going ahead with it?

A. Yes. I said, "If that is your decision, Margaret, I want to have you happy, you make your decision—you be independent on it. I realize we will have to provide money to pay for the building, and if the landscaping is not included in that, I will have to get the money on the side."

■ It is further shown that there was talk between the general contractor and Mr. Skeen about the plaintiff Frehner doing the work and that Mr. Skeen made no objection but allowed Frehner to continue. These facts provide a reasonable

basis for the conclusions that the daughter, Margaret, was authorized by the defendants to engage the plaintiff to do the landscaping; that it was done with the defendants' knowledge; and that, therefore, under the statute their interest in the property was liable for the improvement thus conferred upon it.

The trial judge impaneled a jury to try various issues but finally directed them as to liability and decided as a matter of law that plaintiffs held a valid and subsisting lien on the realty. The amount due and the amount thereof subject to the lien were left for determination by the jury, as was the amount of attorney's fees to be allowed for foreclosing the lien.

The statute providing for attorney's fees is as follows:

In any action brought to enforce any lien under this chapter the successful party shall be entitled to recover a reasonable attorneys' fee, to be fixed by the court, which shall be taxed as costs in the action. (Section 38–1–18, U.C.A. 1953.)

The jury awarded a fee of $750, but on hearing defendants' motion for a new trial and to set aside the verdict and judgment thereon, the court required the plaintiffs to submit to a reduction of attorney's fee to one-half of the total amount covered by the lien.

The plaintiffs cross-appealed and asked that the $750 attorney's fee be reinstated by this court.

■ It would seem that the jury could only have been advisory to the trial judge, as it is his sole prerogative to determine disputed questions of fact in equity matters. At the time of enacting Section 38–1–18 above, the legislature undoubtedly worded the statute as they did because they believed the foreclosure of a mechanic's lien to be an equitable proceeding.

The following language is taken from 36 Am.Jr., Mechanics' Liens, § 239, at page 152:

Where the distinction between actions at law and suits in equity is maintained, proceedings to enforce mechanics' liens are regarded as suits in equity, although the complainant retains the title of the materials furnished until paid for, and are governed by the rules of chancery practice except so far as the mechanic's lien laws have otherwise provided.

■ The statute does not otherwise provide. Dwyer v. Salt Lake City Copper Mfg. Co., 14 Utah 339, 47 P. 311, holds a lien foreclosure to be equitable.

■ In Utah the District Court has jurisdiction of both equity and law matters, yet the proceedings in equitable matters are not the same as in law matters. (See

Rules 1 and 72(a), Utah Rules of Civil Procedure, and Section 59–12–20, Utah Code Annotated 1953 as amended; see also Zeile v. Moritz, 1 Utah 283.)

■ We, therefore, dismiss the plaintiffs' cross-appeal as being without merit, even assuming that they are entitled to a lien. If they are not entitled to a lien, they would not be entitled to an attorney's fee even though one or more of the defendants might be liable for the value of the work done

This leaves us with the problem of whether or not landscaping under the Utah law is work that may be protected by a mechanic's lien. The lien statute covers material furnished and work done in the construction, alteration, or addition to or repair of any *building, structure,* or *improvement* upon land. It will be noted that the statute does not give the lien solely for improvements to the land. This was decided in the case of Backus v. Hooten, 4 Utah 2d 364, 294 P.2d 703. That was a case where a contractor had leveled land so it could be cultivated and irrigated. The matter was before the Supreme Court under Section 14–2–1, Utah Code Annotated 1953, which makes a land owner personally liable for work done and material furnished when he does not require a bond from the contractor, etc. The language of the bond section is practically identical with that of the lien section: "* * * for the construction, addition to, or alteration or repair of, any building, structure or improvement upon land * * *."

In the Backus case it was said:

We are of the opinion that the work done upon defendants' land in leveling the same is not an improvement upon land requiring defendants to comply with the requirement of the statute.

The reasonable interpretation of the legislative intent, gathered from the statute, would seem to make it applicable only to contracts involving buildings or structures of some sort.

\* \* \* \* \* \*

Let it be conceded that leveling land enhances its value and improves its utility. It does not follow that such leveling constitutes an improvement *upon* land. It would seem to be an unreasonable construction to hold that a contract for plowing, seeding, or manuring of land is a contract for the construction of an improvement upon land.

Nor do we feel that it is necessary to call upon any rules of statutory interpretation since the language seems not to require interpretation. However, under a familiar rule of construction the expression "or improvement upon land" can only refer to improvements of a character similar to those immediately before mentioned. (Sutherland Statutory Construction, 3rd Ed., Vol. 2, p. 393, Sec. 4909.)

This is known in law as the Rule of Ejusdem Generis, sometimes called Lord Tenterden's Rule, the doctrine being that where an enumeration of specific things is followed by some more general word or phrase, such general word or phrase is to be held to refer to things of the same kind with respect to a classification which immediately precedes it. (28 C.J.S. p. 1049. See also Gaustad v. Nygaard, 64 N.D. 785, 256 N.W. 230.)

Now, if leveling land is not within the statute, why should landscaping in this case be so? The distinction is that the leveling of land in the Backus case was not done in connection with any building, structure, or improvement upon the land, while in the instant case the landscaping was done as an integral part of the building of a home. The landscaping was designed to give the same esthetic qualities to the home as would the paint applied to the building after it was finished. Both are equally inherent in the enjoyment of the constructed home.

We, therefore, hold that where landscaping is done during the construction of a home and as an integral part of the construction for the purpose of contributing toward the enjoyment to be had from living in that home, the work done and material furnished would be subject to a mechanic's lien.

The judgment of the District Court is affirmed. Each party will bear its own costs.

CALLISTER and TUCKETT, JJ., concur.

HENRIOD, Justice (concurring in the result).

I concur in the result but not in some portions of the main opinion that seem to be obiter that might be construed erroneously in its application to possible future cases.

It is said therein that "It will be noted that the statute does not give the lien for improvements *to* the land." True. But the statute says *upon* the land. Backus v. Hooten says nothing to the contrary, but did use some gratuitous and unnecessary language with respect to plowing, fertilizer and seeds, all of which had little or nothing to do with *leveling* of the land,—the only question in that case.

I think the lien and bond statutes quoted were an outgrowth of the common law concept respecting personalty as it relates to realty. This concept contemplated the "affixation" of something to the realty, which something, if uprooted or jerked out, seriously would impair the land itself and possibly the marketability of the fee.

Leveling off sagebrush affixes nothing to the realty. Manure adds only a temporary offensive odor, and many times seeds add only to the digestion of our feathered friends,—all of which need no compendium here,—where only shrubbery incident to the erection of a home is concerned, which

home, like the shrubbery, is affixed to the realty, as usually is the case with a furnace or Dutch oven. I think the common law analogy of affixation to the realty should be the test. The instant case meets that test, but does not bottom its result on that ground. If Hooten had been confined to its own facts, I wouldn't give a hoot, but it has, besides sagebrush, a few little Virginia creepers in its verbage or verbiage that might obscure the lien law landscape.

The main opinion concludes that "where landscaping is done *during* the construction of a home and as an integral part of the construction for the purpose of contributing toward the enjoyment to be had from living in that home," a lien attaches.

I don't think the *enjoyment* of the home has anything to do with the problem, since there is at least anticipatory enjoyment in spreading fertilizer on a plowed plot planted with lawnseed. And I don't think lienability depends on whether the labor and materials were furnished *during* the construction of the home.

I think the realistic test is whether they were furnished for the purpose of affixing something that would become a part of the realty in the common law concept, whether accomplished *during* the construction of the home or later, irrespective of the question of enjoyment and regardless of distance from the home, if it can be demonstrated that an affixation to the realty was contemplated and accomplished. (Emphasis added.)

NELSON, District Judge (dissenting).

I cannot agree with the distinction made by the prevailing opinion of the instant case with that of Backus v. Hooten.[1]

Nor do I agree that in the instant case the so-called landscaping was done as an integral part of the building of a home.

Nor can I accept the conclusion that the installation of a concrete waterfall and pool gave the same esthetic qualities to the house, which was erected, as would the paint applied to the building after it was finished.

The enjoyment of a building should not be a determinant in the interpretation and application of the mechanic lien law.

For the reasons stated, I dissent.

CROCKETT, C. J., having disqualified himself did not participate herein.

1. Backus v. Hooten, 4 Utah 2d 364, 294 P.2d 703.