514 P.2d 1142

**Mel JENSEN et al., Plaintiffs and Appellants,**

**v.**

**Robert EDDY et al., Defendants and Respondents.**

**No. 13082.**

Supreme Court of Utah.

Oct. 4, 1973.

Olsen & Chamberlain, Ken Chamberlain, Richfield, for plaintiffs and appellants.

Mattsson, Jackson & McIff, Norman H. Jackson, Richfield, for defendants and respondents.

CROCKETT, Justice:

Plaintiffs Anderson, Jensen, et al., as sellers of a coal mine in Salina Canyon, sued the buyers, Eddy, Dickert, etc., seeking to enforce the contract, to recover the amounts payable thereon, for damages for alleged breaches thereof, and for expenses plaintiffs incurred in preserving the assets and value of the mine. Defendants entered general denials, and counterclaimed for damages alleging fraud in the inducement of the contract, failure to perform and deliver equipment by the plaintiff sellers.

Upon a trial to the court it found the issues generally in favor of the plaintiffs and awarded them a total of $35,232.02 on their claims, but also found in favor of the defendants on their counterclaim in the amount of $11,583.78, which it offset against the plaintiffs and gave them a net judgment of $23,648.24; and awarded each side $2,000 as reasonable attorneys' fees for enforcement of their respective rights under the contract as it provides.

Both parties have appealed: Plaintiffs ask reversal of the court's refusal to award reimbursement for expenses incurred in sustaining the mine and also of the judgment against them on the counterclaim. Defendants, in addition to contesting those contentions, cross-appeal, seeking reversal of the damages given to the plaintiffs, and an increase in their awards of damages and of attorneys' fees.

Defendants moved to dismiss plaintiffs' appeal, contending that plaintiffs had waived that right by accepting payment and satisfying the judgment. We are in agreement with the general rule that if a judgment is voluntarily paid, which is accepted, and a judgment satisfied, the controversy has become moot and the right to appeal is waived.[1] This is based upon the reasoning that when a controversy has come to rest the litigation should cease. But pertinent to the problem here is an

1. The case of Sierra Nevada Mill Co. v. Keith-O'Brien Co., 48 Utah 12, 156 P. 943, so holds but acknowledges the exception noted herein.

ancient aphorism: "If the reason for the rule is not present, the rule does not apply." Therefore, the general rule just stated does not usually prevent an appeal as to separate and independent claims where the controversy has not so come to rest. If a judgment is entered as to one part of a controversy, which is separate and distinct from another part, and the disposition of the latter cannot affect the disposition of the former, a party may accept the money or property to which he is entitled, and not be deemed to waive his right to appeal as to other independent claims which the court refused to grant.[2] As will be seen from what is said below, the parts of the judgment on which the defendants claim the plaintiffs accepted payment are separate and distinct from the cause of action which is the main subject of the plaintiffs' appeal. Consequent to the foregoing, we have considered the appeals of both parties on their merits.

The Salina Coal and Trucking Company (a named plaintiff) was a partnership of Paul Anderson, his son, Boyd, and his son-in-law, Mel Jensen. The mine here in question, known as the Sun Valley Coal Mine, was owned and operated by the partnership, but under the active management of Boyd Anderson. In 1964, the partnership obtained a loan of $75,000 from the Small Business Administration (S.B.A.) to finance operations and make improvements on the mine. In addition to the mining property, the loan was secured by the assignment to S.B.A. of a $25,000 insurance policy on the life of the father, Paul Anderson.

From 1964 to 1966, defendant James Dickert, with his own truck, was employed delivering coal. He discussed with Boyd Anderson the possibilities of better operation of the mine and of their buying it. As a result of their discussions, and their realization that they needed more money, they brought into the venture defendant Robert Eddy for that purpose.

In August of 1966, the partnership of the three just mentioned entered into a contract to buy the mine and certain of its operating machinery and equipment from the Salina Coal and Trucking Company. The payments were: First, Dickert and Eddy each paid $7,500 cash, while Boyd Anderson transferred $7,500 of his ownership in Salina Coal and Trucking Company to the sellers. Second, the buyers gave a promissory note for $10,000 which was to be paid by March 1, 1967. Third, the buyers were to assume and pay the balance of the S.B.A. loan of approximately $62,500. Fourth, beginning in September, they were to make payments of $1,600 per month (payable in coal) and thus work off the

2. See Keyes v. Hurlbert, 43 Cal.App.2d 497, 111 P.2d 447, and authorities therein cited; also see 4 C.J.S. Appeal & Error § 216, p. 652 and 4 Am.Jur.2d p. 750.

balance owed to the sellers, of approximately $55,000.

It seems needless to say, because this lawsuit so plainly indicates, the plans as set forth in the contract did not work out. At the time of its execution, the payments on the S.B.A. loan were already six months behind; and the buyers did not make the payments thereon. The following spring, in March of 1967, the father, Paul Anderson, died; and S.B.A., as assignee, collected the $25,000 proceeds of his insurance policy. It applied $15,000 on payments on the loan, kept $5,000 for security on future payments, and turned over $5,000 to plaintiffs on the promise that it would be used to finance the mine and accounts payable.

Meanwhile, James Dickert and Boyd Anderson had divided the responsibility for running the business. Anderson ran the physical plant and Dickert handled the bookkeeping and truck deliveries. By May of 1967, dissension and disagreement had developed, a major reason therefor was that Boyd Anderson urged that he was the partner actually working full time at and operating the mine; that he needed to draw a salary as he had always done. Dickert opposed this. No agreement was reached, and Boyd left to go back to work for plaintiff Salina Coal and Trucking Company. By the fall of 1967, Dickert had become disenchanted with the mine's prospects. So he left and offered to sell out to his partners.

After Dickert left, Boyd Anderson returned to the mine. A number of difficulties existed: There had been a cave-in which had disabled some of the equipment; there were no supplies, no oil, and no personnel, and the situation had disintegrated to the point where it was essential that substantial work must be done and repairs made in order for the mine to operate. Boyd sought and obtained assistance from his family, Salina Coal and Trucking Company, which was devoted to that purpose.

A few months later, Dickert also decided to return to active participation. Disagreements and the failure of Sun Valley to meet its obligations under the purchase contract resulted in this lawsuit framed on the disputed issues stated at the outset of this opinion.

The justification of the trial court's refusal to find that the plaintiffs had perpetrated a fraud in the inducement of the contract is simply stated: He was not persuaded that the defendants had met their burden of proving fraud by clear and convincing evidence.[3] We therefore accept the contract as valid and consider the rights of the parties under and in relation to it.

The problem which we regard as being of principal concern on plaintiffs' aspect of

---

3. Lundstrom v. Radio Corp. of America, 17 Utah 2d 114, 405 P.2d 339 (1965).

this appeal relates to the refusal of the court to allow reimbursement for expenses incurred under Boyd Anderson's management in the fall of 1967 in order to get and keep the mine in operation. It is without any substantial dispute, and finds support in the records, that this was a reasonably necessary expense; and that it amounted to $6,562.75. The controversy on this aspect of the case is not the amount expended, nor the necessity therefor, but the contention that this money had been so advanced and expended without any express request or authorization of the defendants (i. e., Mr. Dickert) and that defendants had no legal obligation to reimburse plaintiffs for such volunteer expenditures.

Implementing that contention, at the conclusion of the evidence the defendants made a motion to dismiss that cause of action (second) on the ground that:

> There has been no showing under the evidence that Defendants were required by the contract to pay for these kinds of things in connection with the contract.

After some further questions and discussion, the trial court refocused upon the point that the contract had not specifically so provided, but that the plaintiff had furnished the money and had the work done as a volunteer:

> THE COURT: I see. But it's all on implication. Well, I don't think that there's any expressed direction or authorization for these people to go into the mine and take over the mine.

\*   \*   \*   \*   \*   \*

It was upon the basis of that reasoning that the trial court granted the motion to dismiss plaintiffs' second cause of action.

■■ In regard to that contention, it is generally held that when one who has a legitimate interest therein makes necessary and reasonable expenditures to protect or conserve the value of property the owners are obliged to reimburse. However, the adjudication upon the issue under consideration here need not depend entirely upon that proposition. What we regard as even more important here is the fact that Boyd Anderson was at the time still a partner with Dickert in the purchasing and operation of the mine. Mr. Dickert himself stated on cross-examination about this phase of the case:

> Boyd Anderson was ordering the supplies. He was supposed to be working for Sun Valley as a partner and trying to keep the mine open.

In accordance with our discussion on this issue, it is in conformity with the requirements of justice that the plaintiffs have judgment for the $6,562.75 expended on the mine at defendants' request.

■ On the defendants' counterclaim: The plaintiffs attack the finding of the trial court that they had failed to deliver

some items of equipment as agreed, and particularly the finding of the value of $7,040. They place special emphasis on urging that a certain truck and a trailmobile were not worth any such amounts as the $3,000 and $2,500 respectively, which the court set as their values. We think it inadvisable and unnecessary to detail the arguments of the parties about the conflicting evidence and the effect it should be given. It is sufficient to say that under the traditional rules of review favoring the findings and judgment of the trial court if supported by any substantial evidence and reasonable inferences to be drawn therefrom, we are not persuaded that such findings should be disturbed.

Defendants also take their turn at attacking the judgment on the counterclaim, contending that they were entitled to a greater amount of damages. Exhibits were introduced in evidence without objection, and were supported by undisputed testimony, showing that the defendants had made expenditures for the benefit of the mining operation to the extent of $845.87. For the same reasons that the plaintiffs are entitled to increase in the amount allowed them of $6,562.75, as discussed above, the defendants are entitled to an offset credit to them of $845.87.

■■■ As another aspect of this case, adjunctive to the main controversy, Boyd, Don, and Carolyn (Jensen) Anderson asserted their rights as named beneficiaries to the proceeds of the $25,000 insurance policy on the life of their father, Paul Anderson. There are two difficulties with their contention. The first is that the insurance policy belonged to their father during his lifetime, and all they as beneficiaries had was an expectancy, contingent on his death. He had a right to deal with his policy in any manner he desired.[4] This would include the right to change the beneficiaries and thus cut them off, or the right to cash it in, or the right to sell or assign his interest therein to anyone he chose, including to a creditor for security of a debt. Upon his death the proceeds were properly paid to his assignee, S.B.A. However, this did have the effect of payment by the plaintiffs on the loan which the defendants had agreed to assume and pay. The trial court correctly allowed the plaintiffs credit as against the defendants for the $20,000 retained by the S.B.A., which is included in plaintiffs' judgment; and they had previously had the benefit of the $5,000 which S.B.A. remitted back to them. Their contention is therefore without merit.

The fact that the trial court gave offsetting awards of attorneys' fees, $2,000 to each side, seems to indicate that he believed that the parties were both at fault, and that neither should have an advantage

4. See Sieroty v. Silver, 53 Cal.2d 799, 26 Cal.Rptr. 635, 376 P.2d 563 (1962).

over the other as to the award of attorneys' fees. We are not persuaded that we would be justified in disagreeing with this adjudication of stalemate on this issue. Accordingly, we do not disturb that part of the judgment. But we further observe that the matter of attorneys' fees is left to the parties and their own attorneys.

This case is remanded for correction of the judgment in accordance with this opinion. The parties to bear their own costs.

CALLISTER, C. J., and ELLETT, HENRIOD and TUCKETT, JJ., concur.