2011 UT App 370

**ALL CLEAN, INC. dba The Flood Co., Plaintiff, Appellant, and Cross-appellee,**

v.

**TIMBERLINE PROPERTIES; James B. Farrell; Farrell J. DeHart; and John Does 1–5 or Jane Does 1–5, Defendants, Appellees, and Cross-appellants.**

No. 20100394–CA.

Court of Appeals of Utah.

Oct. 27, 2011.

L. Miles Lebaron, Tyler J. Jensen, and Jacob D. Briggs, Layton, for Appellant and Cross-appellee.

Dana T. Farmer and Garrett A. Walker, Ogden, for Appellees and Cross-appellants.

Before Judges DAVIS, ORME, and ROTH.

## OPINION

ROTH, Judge:

¶ 1 All Clean, Inc., doing business as The Flood Company, (All Clean) challenges the trial court's denial of its request for attorney fees under the mechanics' lien statute. *See generally* Utah Code Ann. §§ 38–1–1 to –40 (2005, 2010, & Supp.2011). Timberline Properties, James B. Farrell, and Farrell J. De-Hart (collectively, Timberline) cross-appeal,

asserting that Timberline is entitled to attorney fees under the mechanics' lien statute for successfully defending against All Clean's mechanics' lien claim. In the alternative, it requests attorney fees incurred on appeal only. We affirm.

## BACKGROUND

¶ 2 On Monday, January 21, 2008, a pipe broke in one of Timberline's buildings, flooding several offices. Timberline's general partner, Farrell J. DeHart, hired All Clean to conduct "[m]itigation work to preserve, protect, [and] secure the property ... from further damage." The scope of the work included extracting the water, padding the furniture to prevent additional damage, drying the premises, cleaning and deodorizing the carpets, and applying a microbial agent to prevent mold. The mitigation did not involve any structural work or the removal or installation of any carpeting. All Clean estimated the work would take three days at a cost of approximately $2400.00. When De-Hart contacted All Clean on Thursday, January 24, however, the company advised him that it needed another day to complete the drying process. DeHart authorized one additional day of work. At the conclusion of its work, All Clean submitted an invoice to Timberline for $5074.45.

¶ 3 In the meantime, All Clean had been negotiating with Timberline's property insurer, Travelers Insurance Company (Travelers), regarding payment for the flood mitigation. All Clean requested reimbursement in the amount of $5074.45. Travelers agreed to the scope of All Clean's work but authorized payment only in the amount of $4794.07, to be disbursed to All Clean through Timberline. Travelers forwarded a check for $4794.07, less Timberline's deductible under the insurance policy, directly to DeHart. DeHart, however, sent All Clean a check for $3200.00, indicating that he believed that amount was fair payment for All Clean's work.[1] All Clean deposited the check but sent Timberline an invoice for the balance, which Timberline refused to pay. On July 18, 2008, All Clean filed a "Notice of Mechanics' Lien" with the Weber County Recorder.

---

**1.** DeHart explained that he calculated his $3200.00 payment based on the original estimate of $2400.00 for three days. DeHart had author-

ized All Clean to work a fourth day and therefore paid $800.00 for the additional day. He testified that he intended to return the balance of the

¶4 Five months later, All Clean filed a complaint in district court, asserting causes of action for breach of contract, breach of the covenant of good faith and fair dealing, unjust enrichment, and foreclosure of the mechanics' lien. All Clean also sought attorney fees under both the contract and the mechanics' lien statute. Following a bench trial, the trial court rejected All Clean's claims except for unjust enrichment, on which it awarded All Clean $1519.07, the difference between what Timberline had paid and what Travelers had agreed to pay. The court rejected All Clean's mechanics' lien claim, stating, "This is not a mechanic[s'] lien case because the work done by [All Clean] is not of the type which entitles [All Clean] to have a lien upon the property of [Timberline]." Consequently, it denied All Clean's request for attorney fees under the mechanics' lien statute.[2] All Clean has accepted full payment of the judgment on the unjust enrichment claim.

## ISSUES AND STANDARD OF REVIEW

¶5 All Clean now appeals, asserting that the trial court erred in deciding that the flood mitigation work it performed for Timberline was not lienable under the mechanics' lien statute and that it was therefore not entitled to statutory attorney fees. Timberline defends the trial court's interpretation of the mechanics' lien statute and cross-appeals, arguing that it is entitled to attorney fees under the mechanics' lien statute for successfully defending against All Clean's lien claim. Whether the trial court correctly interpreted and applied the statute is a question of law, which we review for correctness. *See John Holmes Constr. v. R.A. McKell Excavating, Inc.*, 2005 UT 83, ¶6, 131 P.3d 199.

## ANALYSIS

I. All Clean's Request for Attorney Fees Under the Mechanics' Lien Statute

A. The Acceptance of Benefits Doctrine

■■■ ¶6 As a threshold issue, we address Timberline's contention that All Clean

waived its right to appeal the trial court's decision when it accepted and deposited full payment on the judgment. "We are in agreement with the general rule that if a judgment is voluntarily paid, which is accepted, and a judgment satisfied, the controversy has become moot and the right to appeal is waived." *Jensen v. Eddy*, 30 Utah 2d 154, 514 P.2d 1142, 1143 (1973). The purpose of this rule is to prevent "[a]n appellant who accepts the benefits of a judgment" from taking advantage of the "significant shift in the burden of risk" to the appellee: on appeal from a judgment that has been satisfied, "[the appellant] exposes the [appellee] to the possibility not only to a possible loss on appeal, but also the potential loss of the benefit he has provided to the appellant." *Trees v. Lewis*, 738 P.2d 612, 613 (Utah 1987). But "[i]f the reason for the rule is not present, the rule does not apply." *Jensen*, 514 P.2d at 1143 (internal quotation marks omitted). Thus, we recognize an exception to the general rule when the appeal is of a separate claim:

> If a judgment is entered as to one part of a controversy, which is separate and distinct from another part, and the disposition of the latter cannot affect the disposition of the former, a party may accept the money or property to which he is entitled, and not be deemed to waive his right to appeal as to other independent claims which the court refused to grant.

*Id.*

¶7 All Clean's appeal from the trial court's denial of attorney fees under the mechanics' lien statute fits squarely within the language of the exception. The trial court granted judgment in favor of All Clean on its unjust enrichment claim on the basis that All Clean had conferred a benefit upon Timberline under circumstances in which it would be inequitable to allow Timberline to retain that benefit without reimbursement of its fair value. All Clean has not appealed the principal

---

$4794.07 (less the deductible) to Travelers once the matter was resolved with All Clean.

**2.** The trial court also rejected All Clean's request for contractual attorney fees, concluding that a contract never existed between the parties.

amount of the judgment awarded under this theory but instead seeks only attorney fees. Thus, the relief sought on appeal is "separate and distinct." *See id.*

¶ 8 More importantly, because the attorney fee relief sought by All Clean is separate and distinct from the principal amount of its judgment already paid by Timberline, this is not a case where Timberline has taken on a significant incremental risk by paying the judgment in full. *See, e.g., Trees,* 738 P.2d at 613 (refusing to consider the seller's appeal of a judgment ordering specific performance of a real estate transaction where the seller had already accepted payment from the buyer and allowed the buyer to move onto the property because the buyer would have the burden of recovering his payment and the expense of removing his personal property if seller was successful). Because entitlement only to attorney fees and not the judgment principal itself is at issue on appeal, the amount of the judgment will not decrease should we reverse. Timberline therefore does not bear the risk of having to recover the principal payment it has already made from a reluctant or insolvent appellant.[3] Consequently, we conclude that the attorney fees claim is separate and distinct from the fully-resolved unjust enrichment claim and that All Clean has not waived its right to appeal by accepting Timberline's payment of the principal amount of the judgment.

B. Application of the Mechanics' Lien Statute

¶ 9 All Clean challenges the denial of attorney fees pursuant to the mechanics' lien statute. *See generally* Utah Code Ann. § 38–1–18(1) (2005) (permitting the successful party in an action to enforce a mechanics' lien to recover its reasonable attorney fees) (current version at *id.* (2010)). The district court rejected All Clean's mechanics' lien claim and denied its request for attorney fees under that statute, stating, "This is not a mechanic[s'] lien case because the work done by [All Clean] is not of the type which entitles [All Clean] to have a lien upon the property of [Timberline]."

¶ 10 "[T]he purpose of the mechanic's lien act is remedial in nature and seeks to provide protection to laborers and materialmen who have added directly to the value of the property of another by their materials and labor." *Projects Unlimited, Inc. v. Copper State Thrift,* 798 P.2d 738, 743 (Utah 1990) (internal quotation marks and alteration omitted). But "[m]echanic's liens are purely statutory, and lien claimants may only acquire a lien by complying with the statutory provisions authorizing them." *Id.; see also Lindemann v. Belden Consol. Min. & Mill. Co.,* 16 Colo.App. 342, 65 P. 403, 404 (1901) (stating that a mechanics' lien statute "must be strictly construed in determining the question as to whether the right to a lien exists").

¶ 11 At the time of All Clean's flood mitigation work in Timberline's office building, Utah's mechanics' lien statute provided that

[c]ontractors, subcontractors, and all persons performing any services or furnishing or renting any materials or equipment *used in the construction, alteration, or improvement of any building or structure or improvement to any premises in any manner* ... shall have a lien upon the property upon or concerning which they have rendered service, performed labor, or furnished or rented materials or equipment.

Utah Code Ann. § 38–1–3 (2005) (emphasis added) (current version at *id.* (Supp.2011)). All Clean argues that the statute identifies two separate and distinct categories of lienable work: (1) services, materials, and equipment "used in the construction, alteration, or improvement of any building or structure" and (2) services, materials, and equipment used to make an "improvement to any premises in any manner." *Id.* According to All Clean, the second category of work is much

---

3. We recognize that Timberline's success on its cross-appeal could result in All Clean owing Timberline money. Success on a claim that results in an offset of judgments, however, does not reduce the amount owed on the original judgment, and Timberline has not addressed the legal question of whether the potential for an offset factors into the determination of whether the appellant has accepted the benefit of that judgment. We therefore do not address the issue further.

broader than the first, particularly considering that this language was added following the Utah Supreme Court decision in *Frehner v. Morton*, 18 Utah 2d 422, 424 P.2d 446 (1967).

¶ 12 In *Frehner*, the supreme court was asked to determine whether the trial court had properly concluded that landscaping work was lienable under the version of the mechanics' lien statute then in effect. *See id.* at 446–47. At that time, a lien could be filed by any person for "material[s] furnished and work done in the construction, alteration, or addition to or repair of any building, structure, or improvement upon land" as well as by certain categories of workers, not including landscapers and nurserymen. *See id.* at 448; *see also* Utah Code Ann. § 38–1–3 (1966). The majority of the court held that landscaping work was lienable because it was "of a character similar to those immediately before mentioned," that is, "construction, alteration, or addition to or repair of any building, structure, or improvement," and because it was done in connection with the construction of the home and "was designed to give the same [a]esthetic qualities to the home as would the paint applied to the building after it was finished," thereby contributing to the inherent enjoyment of the home itself. *See Frehner*, 424 P.2d at 448–49. Justice Henriod concurred but with the qualification that he would expand the reach of the mechanics' lien statute to landscaping solely because the mechanics' lien statute was an outgrowth of a common law concept that "contemplated the 'affixation' of something to the realty, which something, if uprooted or jerked out, seriously would impair the [property] itself." *Id.* at 449–50 (Henriod, J., concurring). In his view, the landscaping at issue, which involved planting shrubbery and installing a waterfall and pool, met this requirement. *See id.* at 447, 449. Six years later, in 1973, the legislature amended the mechanics' lien statute to include the "construction, alteration, or improvement of any building or structure or improvement to any premises in any manner" language, the scope of which is in dispute here. *See* Utah Code Ann. § 38–1–3 (1973).

¶ 13 All Clean urges us to read *Frehner* as standing for the proposition that the common law concept of "affixation" is no longer applicable because the statutory language is "superior[ ]." Therefore, it argues, in construing the statute's first phrase, "used in the *construction, alteration, or improvement* of any building or structure," *id.* (2005) (emphasis added), we can read the word "improvement" as similar to the terms "construction" and "alteration" which immediately precede it. With regard to the second phrase, "or *improvement* to any premises in any manner," *id.* (emphasis added), All Clean asserts that we must construe the term "improvement" more broadly to include betterments of any kind, whether or not "affixed" to the premises. We do not need to address whether the mechanics' lien statute establishes two distinct categories of lienable work because we conclude that work that falls within the scope of the mechanics' lien statute, whether "construction, alteration, or improvement of any building or structure" or "improvement to any premises in any manner," *id.*, shares certain characteristics that All Clean's mitigation work for Timberline did not possess.

¶ 14 We do not disagree with All Clean that the legislature broadened the scope of the mechanics' lien statute following *Frehner*. We understand the principal purpose of the amendments, however, to extend the reach of the statute to unequivocally encompass landscaping and other kinds of relatively significant and enduring improvements to land that were not part of a building or structure, rather than to expand the definition of lienable work to any betterment, however impermanent its nature. For one thing, the express purpose of the amendment was to extend the coverage of the mechanics' lien statute to work completed by landscapers and nurserymen. *See* House Working Bills, H.B. 107, 40th Leg., Gen. Sess. (1973) (entitled "Mechanics' Liens for Landscape Contractors and Nurserymen" and providing as the basis of the change to Utah Code section 38–1–3, the "entitl[ement of] landscape contractors and nurserymen to the benefit of the mechanics' lien laws of this state"). Moreover, the word "improvement" in the mechanics' lien context does not refer simply to any work that makes the premises better. Rather, "improvement" is a legal term that

has been construed to connote physical affixation and enduring change to premises in a manner that adds value. *See* 56 C.J.S. *Mechanics' Liens* § 18 (2007) ("The term 'improvement,' within the meaning of a mechanic's lien statute, is used in the sense of an addition to property rather than in the restricted sense of improvement by repair."); *see also* 53 Am.Jur.2d *Mechanics' Liens* § 55 (2006) (defining improvement as "anything that enhances the value of the land, or as a valuable addition made to property or an amelioration in its condition, that amounts to more than mere repairs, and is intended to enhance the value, beauty, or utility of the property or to adapt it for new or further purposes").

¶ 15 The recognition of physical annexation and physical alteration of relative substance and durability as the central characteristics of lienable work becomes even more apparent when considering cases that interpret the mechanics' lien statute post-*Frehner.* In *Daniels v. Deseret Federal Savings & Loan Ass'n,* 771 P.2d 1100 (Utah Ct.App.1989), this court was asked to determine whether the trial court had properly granted summary judgment in favor of the defendants on the plaintiff's claim for a mechanics' lien. *See id.* at 1101. The plaintiff, Daniels, had served as general contractor on the defendants' condominium project. *See id.* Although Daniels was not immediately paid for his work, he did not file a mechanics' lien within 100 days of completing the work as required by the statute. *See id.* at 1101–02. Over a year later, the defendants hired Daniels to inspect and repair the condominium's frozen water pipes. *See id.* at 1101. Daniels completed the work, filed a notice of mechanics' lien when he did not receive prompt payment, and then filed a complaint to foreclose upon the lien. *See id.* The trial court granted summary judgment in favor of the defendants on the grounds that the lien was not timely filed on the original work and the repairs did not constitute "improvements" that served to extend the time for filing. *See id.* We affirmed, concluding, inter alia, that "the inspection and repairs ... were not services used in the construction, alteration, or improvement of the building, nor did the services add directly to the value of the property," and thus they could not extend the time period for filing a lien. *See id.* at 1102. We also noted that

> [i]n order to ascertain when an improvement has been made upon the land, for purposes of determining whether notice of a mechanic's lien can validly be filed, it is necessary that *"there be an annexation to the land, or to some ... part of the realty; or a fixture appurtenant to it,* and this must have been done with the intention of making it a permanent part thereof."

*Id.* at 1103 (emphasis and ellipsis added) (quoting *King Bros., Inc. v. Utah Dry Kiln Co.,* 13 Utah 2d 339, 374 P.2d 254, 256 (1962)). Although *Daniels* does not specify what the pipe repairs entailed, it apparently was not "an amelioration in [the property's] condition, that amounts to more than mere repairs," *see* 53 Am.Jur.2d *Mechanics' Liens* § 55, nor was it the type of physical alteration of a longlasting nature to the structure or the premises contemplated by the concept of lienable work, *see Daniels,* 771 P.2d at 1103. Thus, if minor repairs, such as the work conducted in *Daniels,* are not lienable,[4] mitigation work that merely involves cleanup or remediation to return the property to its precasualty condition and that does not implicate any physical affixation to or alteration of the structure of the building or the premises cannot be either.

¶ 16 The distinction between ordinary cleanup and improvement, as the term is used in the mechanics' lien statute, is acknowledged in *Calder Brothers Co. v.*

4. While minor repair work is not an improvement for purposes of the mechanics' lien statute, we have held, in at least one case, that more significant repairs are. *See generally Advanced Restoration, LLC v. Priskos,* 2005 UT App 505, ¶¶ 3, 30–31, 126 P.3d 786 (deeming "extensive" repairs to damaged walls, floors, carpets, and ceiling tile following flooding caused by a broken toilet supply tube lienable). The crux of that case, however, was whether the tenant was act-ing as an agent for his landlord, and there is no discussion of whether the work was lienable under the statute. *See id.* ¶¶ 16, 19–31. Because All Clean's mitigation work did not implicate any change to or replacement of either fixtures or structural components, it could not be considered in any way extensive, and we need not resolve here the precise boundary between lienable and nonlienable repair work.

*Anderson,* 652 P.2d 922 (Utah 1982). There, the trial court had to determine the priority between a mechanics' lien and a mortgage. *See id.* at 923–24. The mechanics' lien had been filed after the mortgage was recorded, but the plaintiffs asserted that the lien related back to weeding, tree trimming, painting, and grout replacement work that had occurred prior to the recording of the mortgage. *See id.* at 923. The trial court held that this cleanup work was "insubstantial and constituted ordinary and necessary maintenance" rather than improvement. *See id.* at 924–25. The supreme court agreed, stating that "[o]rdinary maintenance or cleanup work does not serve as a basis for 'tacking' so as to fix an earlier lien date." *Id.* at 924. Nor was there anything in the building permit for the postmortgage improvements that suggested that the premortgage cleanup and maintenance were part of a larger improvement project. *See id.*

¶ 17 All Clean's mitigation work in this case—the removal of the excess water and the drying, scrubbing, and mold prevention activities within the building, rather than replacements or changes implicating the structural components of Timberline's building or its fixtures—amounts to relatively minor restoration or cleanup work akin to the frozen pipe repair in *Daniels* or the maintenance work in *Calder.* As noted, our courts have held this type of work not to be independently lienable.[5]

¶ 18 All Clean further asserts, however, that its mitigation work still constituted a lienable improvement because even if the change only restored the building to its previous condition, the work increased the building's value by "chang[ing the property] from being uninhabitable to being fit for its intended purpose." All Clean finds support for this argument in *First of Denver Mortgage Investors v. C.N. Zundel & Associates.,* 600 P.2d 521 (Utah 1979), a case in which the Utah Supreme Court determined that the defendant's installation of sewer and water systems amounted to lienable work because it "enhance[d] the value" of the property and was "necessary to make residences to be built on such property habitable." *Id.* at 525. Although All Clean correctly identifies the policy basis for the supreme court's decision, it does not acknowledge a primary distinction between *First of Denver* and the instant case. In *First of Denver,* once the work was completed, new sewer and water systems were physically affixed to the property and constituted a change that made the property suitable for a new or further purpose, i.e., as a residence. *See id.* Here, All Clean's work restored the building to its prior condition only by removing water and otherwise cleaning up from flooding. Its work, therefore, did not involve any affixation to the premises or structural change to the building and as we have just discussed, *see supra* ¶¶ 14–17, physical affixation and enduring change are the primary characteristics of lienable work. While an improvement is generally also marked by an increase in value, enhanced value by itself is not an independent, alternative criterion by which lienable status can be achieved. *See generally Frehner v. Morton,* 18 Utah 2d 422, 424 P.2d 446, 448–49 (1967) (distinguishing landscaping work from the leveling work deemed as nonlienable in *Backus v. Hooten,* 4 Utah 2d 364, 294 P.2d 703 (1956), because although leveling "enhances [the land's] value and improves its utility," it, like seeding, plowing, or manuring land, is "not an improvement").

¶ 19 Because All Clean's flood mitigation work in Timberline's building was not an "improvement of any building or structure or an improvement to any premises," *see* Utah Code Ann. § 38–1–3 (current version at *id.* (Supp.2011)), so as to fall within the scope of

---

5. This interpretation of our mechanics' lien statute is in accord with decisions in other states with similar statutes. *See, e.g., Inter–Rail Sys., Inc. v. Ravi Corp.,* 387 Ill.App.3d 510, 326 Ill. Dec. 771, 900 N.E.2d 407, 408–10, 412, 414 (2008) (affirming the denial of a mechanics' lien for cleanup of a chemical spill because the plaintiff was "only involved in the removal of the debris, already contained," "ma[king] no changes to the structure of the building or its land either by repair or demolition," and such "services that merely maintain rather than improve property are nonlienable activities"); *TPST Soil Recyclers of Wash., Inc. v. W.F. Anderson Constr., Inc.,* 91 Wash.App. 297, 957 P.2d 265, 265, 267 (1998) (stating that a mechanics' lien could not be had where plaintiff engaged only in the removal, treatment, and disposition of contaminated soil because such activities did not constitute improvement).

the mechanics' lien statute, we affirm the trial court's decision that the statute did not apply here and that All Clean was therefore not entitled to the benefit of the statute's attorney fees provision. *See generally* Utah Code Ann. § 38–1–18(1) (2005) (awarding attorney fees to the "successful party" in a mechanics' lien foreclosure action) (current version at *id.* (2010)). We also deny All Clean's request for attorney fees on appeal on the same ground. *See id.*

## II. Timberline's Cross–Appeal for Attorney Fees Under the Mechanics' Lien Statute

■ ¶ 20 The mechanics' lien statute provides that "in any action brought to enforce any lien under this chapter the successful party shall be entitled to recover a reasonable attorneys' fee." *Id.* Timberline cross-appeals, arguing that it is entitled to attorney fees under the statute for its successful defense against All Clean's mechanics' lien claim. We do not address this issue, however, because it was not raised in the trial court and, therefore, is not preserved for appeal. *See generally 438 Main St. v. Easy Heat, Inc.,* 2004 UT 72, ¶ 51, 99 P.3d 801 ("[I]n order to preserve an issue for appeal[,] the issue must be presented to the trial court in such a way that the trial court has an opportunity to rule on that issue. This requirement puts the trial judge on notice of the asserted error and allows for correction at that time in the course of the proceeding." (alterations in original) (citations and internal quotation marks omitted)); *In re E.D.,* 876 P.2d 397, 401 (Utah Ct.App.1994) (recognizing that appellate courts "consistently refuse[ ] to address issues … that are raised for the first time on appeal"). Indeed, Timberline never made a request to the trial court for attorney fees under the mechanics' lien statute.

¶ 21 Apparently recognizing this problem, Timberline does not assert that it raised the issue in the trial court but instead argues that because the trial court ruled on attorney fees, the issue is preserved for appeal. Spe-cifically, it points to the trial court's oral statements that it did not "think this is a mechanic[s'] lien case. . . . As a result, [it did] not award[ ] … any attorney's fees." Nothing about the trial court's ruling, however, indicates that it was denying attorney fees to Timberline under the mechanics' lien statute. Rather, the ruling, in context, appears to be limited to All Clean's request for attorney fees.

■ ¶ 22 In the alternative, Timberline claims it is entitled to attorney fees incurred only on appeal. In support of its position, Timberline cites *Robertson's Marine, Inc. v. I4 Solutions, Inc.,* 2010 UT App 9, 223 P.3d 1141, a case where this court awarded plaintiff attorney fees incurred on appeal despite the lack of an award in the trial court. *See id.* ¶¶ 18–20. In *Robertson's Marine,* however, the plaintiff had requested fees in the trial court and the issue was thus preserved for appeal. *See id.* ¶¶ 4, 19. We therefore reject Timberline's request for attorney fees in the trial court and on appeal.

## CONCLUSION

¶ 23 We agree with the trial court that the mechanics' lien statute does not apply to the work completed here. We therefore affirm its refusal to award attorney fees to All Clean pursuant to the statute. Furthermore, because Timberline failed to raise the issue of its entitlement to attorney fees for successfully defending against All Clean's mechanics' lien claim in the trial court, that issue is not preserved for appeal and we do not address it.

¶ 24 WE CONCUR: JAMES Z. DAVIS, Presiding Judge and GREGORY K. ORME, Judge.